TRINETTE G. KENT (State Bar No. 222020)
10645 North Tatum Blvd., Suite 200-192
Phoenix, AZ 85028
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

Sergei Lemberg (*phv* application to follow) (CT Bar. No. 425027)
Stephen Taylor (*phv* application to follow) (CT Bar No. 428505)
Lemberg Law LLC
43 Danbury Road
Wilton, CT 06897
Telephone:  (203) 653-2250
Facsimile:  (203) 653-3424
E-mail: slemberg@lemberglaw.com
E-mail: staylor@lemberglaw.com

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cory Larson, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>Harman-Management Corporation; and 3Seventy, Inc.,<br><br>Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.***<br><br>**JURY TRIAL DEMANDED** |

For his Class Action Complaint, Plaintiff, Cory Larson, by and through his undersigned counsel, pleading on his own behalf and on behalf of all others similarly situated, states as follows:

## INTRODUCTION

1. Plaintiff, Cory Larson ("Plaintiff"), brings this class action for damages resulting from the illegal actions of Harman-Management Corporation ("Harman" or "Defendant"). Defendants sent unauthorized text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

2. Wireless spam is a growing problem in the United States. In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited February 9, 2016); *see also* Nicole Perlroth, *Spam Invades a Last Refuge, the Cellphone*, N.Y.Times, April 8, 2012, at A1 ("In the United States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

3. Harman is a nationwide franchisee of several fast-food restaurant chains including KFC, Taco Bell, Pizza Hut and A&W Restaurants. In a combined effort with 3Seventy, Inc. ("3Seventy" and with Harman "Defendants") to market its restaurants' products, Harman established a coupon program whereby Defendants sent automated text messages to consumers offering discounted or free food items.

4. Defendants sent Plaintiff and other consumers its automated telemarketing text messages without obtaining clear and conspicuous prior express written consent as required by the TCPA.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this matter pursuant to 28 U.S.C.

§ 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

7. Plaintiff is, and at all times mentioned herein was, an adult individual residing in Fresno, California, and is a "person" as defined by 47 U.S.C. § 153(39).

8. Harman is a Utah business entity with an address of 199 First Street, Suite 212, Los Altos, California 94022, and is a "person" as defined by 47 U.S.C. § 153(39).

9. 3Seventy is a Delaware business entity with an address of 2224 Walsh Tarlton Lane, Suite 220, Austin, Texas 78746, and is a "person" as defined by 47 U.S.C. § 153(39).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

10. The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

11. Specifically, 47 U.S.C. § 227(b)(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

12. 47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B) to dial such numbers.

13. "Prior express *written* consent" is required before making automated *telemarketing* calls, meaning there must be a written agreement, signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200.

14. The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

## ALLEGATIONS APPLICABLE TO ALL COUNTS

15. In 2012, Harman and 3Seventy set out on a telemarketing campaign to send consumers coupons for Harman restaurant food items via automated text messages.[1]

16. Defendants placed text messages to the Plaintiff's cellular telephone from number 70626, an abbreviated telephone number known as an SMS short code licensed and operated by Harman or 3Seventy.

17. At all times referenced herein, Harman acted through and with 3Seventy to send marketing text messages.

18. Defendants' first text message to Plaintiff was in response to Plaintiff text-messaging the word "BURGER" to number 70626. Plaintiff had texted "BURGER" to the 70626 number to obtain a free A&W Papa Burger Single as part of Defendants' promotional campaign.

---

[1] *See* Carrie Chitsey, *A&W Burger Franchise Delivers Tasty Mobile Deals with SMS Marketing from 3Seventy*, prweb (June 28, 2012), http://www.prweb.com/releases/2012/6/prweb9638487.htm.

19. However, unbeknownst to the Plaintiff, and undisclosed by the Defendants, Defendants' captured Plaintiff's telephone number, and thereafter sent him multiple unprompted and uninvited automated text promotions related to A&W Restaurant food items.

20. Plaintiff continued to receive Defendants' automated text messages through February of 2016.

21. Defendants' text messages received by Plaintiff were fully automated. The content of the messages received by Plaintiff was not individualized to Plaintiff in any way. The exact same messages were automatically sent to thousands of consumers as a part of the pre-planned telemarketing campaign between Harman and 3Seventy.

22. Plaintiff texting "BURGER" to Defendants did not provide Defendants prior express written consent to send Plaintiff automated calls as required by the TCPA. Plaintiff was not given clear and conspicuous disclosure that he was consenting to receive fully automated text messages to his cellular phone for years in the future.

23. The text messages sent to Plaintiff's cellular phone were made with an ATDS as defined by 47 U.S.C. § 227(a)(1). The ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

24. The telephone number messaged by Defendants was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

25. The messages from Defendants to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

## CLASS ACTION ALLEGATIONS

**A. The Class**

26. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on

behalf of himself and all others similarly situated.

27.    Plaintiff represents, and is a member of the following class (the "Class"):

**All persons within the United States to whom Defendants sent a telemarketing text message using an ATDS without said person's prior express written consent.**

28.    Defendants and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the class members number in the tens of thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

B. <u>Numerosity</u>

29.    Upon information and belief, Defendants have sent automated telemarketing text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

30.    The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

C. <u>Common Questions of Law and Fact</u>

31.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions include:

    a. Whether Defendants sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

    b. Whether Defendants' text messages were sent for telemarketing purposes;

    c. Whether Defendants can meet their burden of showing they

obtained prior express written consent to send each message;

d. Whether Defendants' conduct was knowing and/or willful;

e. Whether Defendants are liable for damages, and the amount of such damages; and

f. Whether Defendants should be enjoined from such conduct in the future.

32. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely send automated text messages to telephone numbers assigned to cellular telephone services without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### D. Typicality

33. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### E. Protecting the Interests of the Class Members

34. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

### F. Proceeding Via Class Action is Superior and Advisable

35. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Defendants is small because it is not economically feasible for Class members to bring individual actions.

36. Management of this class action is unlikely to present any difficulties. Several courts have certified classes in TCPA actions. These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski*

*v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

### COUNT I
### Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

37. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

38. Defendants sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

39. Each of the aforementioned messages by Defendants constitutes a violation of the TCPA.

40. Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

41. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendants in the future.

42. Plaintiff and Class members are also entitled to and do seek a declaration that:

- Defendants violated the TCPA;
- Defendants used an ATDS; and
- Defendants placed calls to the Plaintiff and the Class without prior express written consent.

# COUNT II
### Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

43. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

44. Defendants knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express consent.

45. Each of the aforementioned messages by Defendants constitutes a knowing and/or willful violation of the TCPA.

46. As a result of Defendants' knowing and/or willful violations of the TCPA, Plaintiff and the Classes are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

47. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendants in the future.

48. Plaintiff and TCPA Class members are also entitled to and do seek a declaration that:

- Defendants knowingly and/or willfully violated the TCPA;

- Defendants knowingly and/or willfully used ATDS on calls to Plaintiff and the Class;

- Defendants knowingly and/or willfully obtained the telephone numbers of non-debtors;

- Defendants willfully placed automated calls to non-customers such as Plaintiff and the Class, knowing it did not have prior express consent to do so; and

- It is Defendants' practice and history to place automated telephone calls to non-consumers without their prior express consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendants as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;
2. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);
3. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);
4. An award of attorneys' fees and costs to counsel for Plaintiff and the Classes; and
5. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  February 17, 2016              Respectfully submitted,

By: _/s/   Trinette Kent_
Trinette Kent, Esq. (Bar No. 222020)
Lemberg Law, LLC
Attorney for Plaintiff, Cory Larson