UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY LARSON,<br><br>    Plaintiff,<br><br>    v.<br><br>HARMAN MANAGEMENT CORPORATION and 3SEVENTY, INC.,<br><br>    Defendants. | No. 1:16-cv-00219-DAD-SKO<br><br>ORDER DENYING DEFENDANT HARMAN MANAGEMENT CORPORATION'S MOTION TO STAY PROCEEDINGS<br><br>(Doc. No. 64) |

This matter comes before the court on defendant Harman Management Corporation's motion to stay proceedings in this action. A hearing on the motion was held on July 6, 2017. Attorney Bruce Boehm appeared on behalf of defendant Harman Management Corporation ("HMC"), and attorney Adam Bowser appeared on behalf of defendant 3Seventy, Inc. ("3Seventy"). Attorney Sergei Lemberg appeared on behalf of plaintiff Cory Larson. The court has considered the parties' briefs and oral arguments. For the reasons stated below, the court will deny the motion to stay.

## BACKGROUND

**A.     Factual Background**

According to plaintiff's first amended complaint, defendants HMC and 3Seventy set out on a telemarketing campaign in 2012 to send coupons to consumers for restaurant food items via

1

automated text messages.  (Doc. No. 22 ¶ 19.)  In response to one A&W Restaurant promotional offer, plaintiff texted the word "BURGER" to an SMS short code licensed to and operated by defendants.  (*Id.* ¶¶ 21, 23.)  After initially responding to plaintiff's text message, defendants allegedly stored plaintiff's telephone number and thereafter sent multiple unprompted and uninvited automated text messages related to other A&W Restaurant food items.  (*Id.* ¶¶ 23–25.)  Plaintiff received at least two such messages—on November 16, 2014, and on June 1, 2015—without prior express written consent, and continued to receive such messages through February 2016.  (*Id.* ¶ 28.)

In this action, plaintiff alleges that defendants violated the Telephone Consumer Protection Act ("TCPA"), in part by using an automatic telephone dialing system ("ATDS") to send the uninvited text messages.  Specifically, plaintiff alleges that defendants' system "has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator."  (*Id.* ¶¶ 37–41.)  Alternatively, plaintiff also alleges that "[i]n the unlikely event that Defendant's system does not already have the capacity to generate random or sequential numbers, that capacity can be trivially added."  (*Id.* ¶ 42.)  Finally, plaintiff alleges specific illustrative lines of computer code that could be added to defendants' system to generate random and sequential numbers.  (*See id.* ¶¶ 43–48.)

**B.       The Telephone Consumer Protection Act and the ACA International Litigation**

The TCPA makes it unlawful for any person "to make any call . . . using any automatic telephone dialing system" to certain types of telephones without the called party's prior express consent.  47 U.S.C. § 227(b)(1)(A)(iii).  The term "automatic telephone dialing system" is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  In 2015, the Federal Communications Commission ("FCC") adopted rules and regulations concerning the defining features of an ATDS.  *See* In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961 (2015) (effective July 10, 2015).  Therein, the FCC took the position that the term "capacity" in the TCPA refers to not only a system's "present ability" to dial random or sequential numbers, but also a system's potential

1  ability to do so. *Id.* at 7974. Thus, even equipment that presently lacks software necessary to
2  enable sequential or random dialing—but might later be programmed to do so—could constitute
3  an ATDS. *Id.*

4  This distinction between present and potential ability is at issue in *ACA International v.*
5  *Federal Communications Commission*, a case currently pending before the D.C. Circuit Court of
6  Appeals. Appellants in that case contend that the FCC's definition of an ATDS is unlawful. (*See*
7  Doc. No. 66-1, Ex. A at 21–39.) Specifically, they argue the FCC's definition of the term
8  "capacity" is erroneously broad and must be limited to a system's present abilities only. (*See id.*
9  at 22.) All briefing in that case has concluded, and the court conducted oral argument in October
10 2016. *See* Oral Argument, *ACA Int'l v. Federal Commc'ns Comm'n*, No. 15-1211 (D.C. Cir. Oct.
11 19, 2016), Doc. No. 1641668. To date, however, no order in that case has issued.

12 **C.    Defendant HMC's Motion to Stay**

13 On June 8, 2017, defendant HMC filed the instant motion to stay proceedings in this case,
14 pending the outcome in *ACA International*, arguing that resolution of the issues in that case will
15 directly affect plaintiff's claims here. (*See* Doc. No. 65 at 8.) On June 22, 2017, plaintiff Larson
16 filed his opposition. (Doc. No. 67.) That same day, defendant 3Seventy filed its response,
17 indicating its non-opposition to the motion for a stay and raising several unrelated concerns.
18 (Doc. No. 68.) On June 29, 2017, defendant HMC filed its reply. (Doc. No. 70.)

19 **LEGAL STANDARD**

20 "[T]he power to stay proceedings is incidental to the power inherent in every court to
21 control the disposition of the causes on its docket with economy of time and effort for itself, for
22 counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Stone v.*
23 *I.N.S.*, 514 U.S. 386, 411 (1995) ("[W]e have long recognized that courts have inherent power to
24 stay proceedings and 'to control the disposition of the causes on its docket with economy of time
25 and effort for itself, for counsel, and for litigants.'") (Breyer, J., dissenting) (quoting *Landis*, 299
26 U.S. at 254)). Deciding whether to grant a stay pending the outcome of other proceedings "calls
27 for the exercise of judgment, which must weigh competing interests and maintain an even
28 balance." *Landis*, 299 U.S. at 254–55. The party seeking such a stay must "make out a clear case

of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else." *Id.* at 255. In considering whether to grant a stay, this court must weigh several factors, including "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). A stay may be granted regardless of whether the separate proceedings are "judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

**DISCUSSION**

The court begins its analysis, as the Supreme Court did in *Landis*, by inquiring whether there is "a fair possibility that [a] stay . . . will work damage" to the non-moving party. *Landis*, 299 U.S. at 255. Here, the court agrees with defendant HMC that a short stay in this action will likely result in little damage, if any, to plaintiff and the putative class.[1] Thus, this factor weighs slightly in favor of a stay.

Next, the court must examine whether defendant HMC has made out "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 254–55. Based on the court's review of the briefing in *ACA International*, one dispute appears to center around whether the definition of the term "capacity" may be properly broadened to include automatic telephone dialing systems that only have the potential ability to dial random or sequential numbers. In this case, as noted above, plaintiff has pled alternative theories of liability under the TCPA—i.e., that defendants' autodialing system had either the present or the potential ability to dial numbers randomly or sequentially. Thus, even if the D.C. Circuit Court of Appeals issues an opinion in defendants' favor, plaintiff's claims under the TCPA are likely to survive on plaintiff's "present

---

[1] It is worth noting, however, that nearly nine months have elapsed since the court of appeals took the matter under submission, and it is far from certain that a decision is imminent.

4

ability" theory.  In moving for a stay of this action, defendant HMC principally argues that all parties will suffer some degree of economic hardship resulting from unnecessary litigation expenses and the "uncertain scope of discovery." (*See* Doc. No. 65 at 9.)  HMC further suggests that moving forward without a stay may result in tens of thousands of dollars in discovery costs.  (Doc. No. 70 at 6.)  However, in this courts view, defendants have been unable to describe the extent to which they believe discovery would be rendered unnecessary in the event of a favorable decision in *ACA International*.  Where defendants have not identified any particular harm beyond the cost of litigating this action, the Ninth Circuit has held that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).  Accordingly, consideration of this factor weighs against the imposition of a stay.

      Finally, the court must look to whether there is a benefit to "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268.  In its motion, defendant HMC principally relies on the argument that a decision in *ACA International* might ultimately affect this court's interpretation of the FCC's 2015 rules and regulations and, relatedly, help narrow the scope of discovery in this case.  (*See* Doc. No. 65 at 9–10.)  However, the issue of actual or potential ability of defendants' alleged ATDS is only one of several issues that require resolution in this case.  Any marginal simplification of the issues that may result from the anticipated ruling *ACA International* litigation is far outweighed by the volume of issues the parties must address irrespective of the D.C. Circuit's ultimate decision on the issues before it.  To the extent the appellate court's decision might ultimately affect the law applicable to this case, the court concludes that at this stage, a stay would provide little benefit to the orderly course of justice.  *See Knapper v. Cox Communication*, No. CV-17-00913-PHX-SPL, 2017 WL 2983912, at *2 (D. Ariz. July 10, 2017) (denying defendant's motion for a stay pending the ruling in *ACA Int'l*); *Petras v. Ocwen Loan Servicing, LLC*, Case No: 5:17-cv-73-Oc-30PRL, 2017 WL 2426846, at *1 (M.D. Fla. June 5, 2017) (same).

/////

**CONCLUSION**

Accordingly, defendant HMC's motion to stay (Doc. No. 64) is denied without prejudice.

IT IS SO ORDERED.

Dated:  **July 26, 2017**

_____
UNITED STATES DISTRICT JUDGE