1 David L. Bird, *Pro Hac Vice* (Utah Bar No. 0335)
Jeremy C. Sink, *Pro Hac Vice* (Utah Bar No. 9916)
2 **McKAY, BURTON & THURMAN**
15 West South Temple, Suite 1000
3 Salt Lake City, Utah 84101
Telephone: (801) 521-4135
4 Facsimile: (801) 521-4252
Email: dbird@mbt-law.com; jsink@mbt-law.com
5
Martin W. Jaszczuk, *Pro Hac Vice* (Ill. Bar No. 6277720)
6 **JASZCZUK P.C.**
311 South Wacker Drive, Suite 1775
7 Chicago, IL 60606
Telephone: (312) 442-0509
8 Facsimile: (312) 442-0519
Email: mjaszczuk@jaszczuk.com
9
Bruce J. Boehm (Cal. Bar No. 186715)
10 **JONES WALDO HOLBROOK & McDONOUGH**
170 South Main Street, Suite 1500
11 Salt Lake City, UT 84101
Telephone: 801-521-3200
12 Facsimile: 801-328-0537
Email: bboehm@joneswaldo.com
13

*Attorneys for Defendant Harman Management Corporation*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CORY LARSON, *on behalf of himself and all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>HARMAN MANAGEMENT CORPORATION; 3SEVENTY, INC.,<br><br>Defendants. | Civil No: 1:16-CV-00219-DAD-SKO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HARMAN MANAGEMENT CORPORATION'S MOTION TO STAY**<br><br>Hearing Date: December 4, 2018<br>Time: 9:30 a.m.<br>Judge: Dale A. Drozd<br>Location: Courtroom 5 |

Defendant Harman Management Corporation ("HMC"), by and through its undersigned counsel, hereby moves the Court, pursuant to the doctrine of primary jurisdiction and the Court's inherent power to control its docket, to stay this action pending the FCC's forthcoming omnibus regulations clarifying the definition of "automatic telephone dialing system" under the Telephone Consumer Protection Act ("TCPA"). While the Court has not granted HMC's

previous requests for a stay, the legal landscape has recently changed, giving rise to new grounds and circumstances weighing heavily in favor of a stay at this stage of the proceedings.

**<u>INTRODUCTION</u>**

One of the central issues in this case is whether the equipment allegedly used to send text messages to Plaintiff and other putative class members was an "automatic telephone dialing system" ("ATDS") within the meaning of the TCPA.

Throughout this case, the definition of an ATDS has been a moving target. The Federal Communications Commission ("FCC") is the federal agency charged with construing and enforcing the TCPA. In 2015, the FCC issued an order interpreting and expanding upon certain aspects of the TCPA's definition of an ATDS. But that order and related regulations were challenged by numerous interested parties and ultimately vacated by the D.C. Circuit Court of Appeals, *see ACA Int'l v. FCC*, 885 F.3d 687 (D.C Cir. 2018), leaving a statutory definition that is "ambiguous," according to the Court of Appeals for the Ninth Circuit. *See Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 WL 4495553, at \*8 (9th Cir. Sept. 20, 2018). And even though the Ninth Circuit has now weighed in on one aspect of the ATDS definition, its decision created a division within the circuits on that issue and left other important questions unanswered. *See id.* at \*9 (not reaching the issue of what amount of "human intervention" would cause a device to cease being automatic); *id.* at \*9 n.9 (declining to reach the capacity issue); *id.* at \*9 n.8 (disagreeing with the decision of the Third Circuit in *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116, 120 (3d Cir. 2018)). Furthermore, the decision of the Ninth Circuit is potentially at odds with *ACA International*. *See Marks*, 2018 WL 4495553 (leaving open the possibility that any smartphone could operate "automatically" enough to qualify as an ATDS). All told, there is "a significant fog of uncertainty about how to determine if a device is an ATDS so as to bring into play the restrictions on unconsented calls." *ACA Int'l*, 885 F.3d at 703.

However, the FCC is poised to eliminate the "fog of uncertainty," as it is currently considering a joint trade petition addressing the definition of an ATDS,[1] and has issued two

---

[1] *See* Petition for Declaratory Ruling, U.S. Chamber of Commerce and ACA International, et al., CG Docket 02-278, at i, 20, 27 (FCC May 3, 2018) (hereinafter, "Joint Trade Petition") (asking the FCC to (1) confirm that, in order to be an ATDS, equipment must use a random or sequential number generator to

2

HMC's MEMO IN SUPPORT OF ITS MOTION TO STAY

Public Notices[2] requesting comments on how an ATDS should be defined, the latter of which allotted only two weeks for comments.  Industry experts anticipate that the FCC's "TCPA Omnibus II" regulation will be forthcoming within the next few months.[3]

Because the FCC has been designated by Congress as the agency responsible for interpreting the TCPA, and because the FCC is in the middle of fulfilling this duty, the Court should exercise its discretion to stay this litigation under the primary jurisdiction doctrine. Alternatively, the Court should stay this case pursuant to its inherent powers to control its docket.

## BACKGROUND

### A. Plaintiff's Allegations and Defendants' Response

Plaintiff alleges that Defendants sent unauthorized text messages to his cell phone using an automatic telephone dialing system ("ATDS") in violation of the Telephone Consumer Protection Act ("TCPA"). *See* First Amended Complaint ("FAC"), at ¶¶ 33–48. Plaintiff contends that Defendant 3Seventy's text messaging system "has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator" or, alternatively, that the capacity to generate random or sequential numbers could be "trivially added" to 3Seventy's system in the event that it currently lacks that capacity.  FAC, at ¶¶ 37, 42.

Throughout these proceedings, Defendant 3Seventy has denied that its web-based text messaging system is an ATDS.  *See* 3Seventy's Answer and Affirmative Defenses, filed

---

store or produce numbers and dial those numbers without human intervention, and (2) find that only calls made using actual ATDS capabilities are subject to the TCPA's restrictions).
[2] FCC Public Notice, *Consumer & Governmental Affairs Bureau Seeks Comment on Interpretation of the Tel. Consumer Prot. Act in Light of the D.C. Circuit's Aca Int'l Decision*, 02-278, 2018 WL 2253215, at *1 (OHMSV May 14, 2018) (hereinafter, "First Public Notice"); FCC Public Notice, *Consumer & Governmental Affairs Bureau Seeks Further Comment on Interpretation of the Tel. Consumer Prot. Act in Light of the Ninth Circuit's* Marks v. Crunch San Diego, LLC *Decision*, 02-278, 2018 WL 4801356, at *1 (OHMSV Oct. 3, 2018) (hereinafter, "Second Public Notice").
[3] *See* Klein Moynihan Turco, *TCPA News: FCC Seeks Public Comment on ATDS Definition* (October 5, 2018), available at http://www.kleinmoynihan.com/tcpa-news-fcc-seeks-public-comment-on-atds-definition/?utm_source=Mondaq&utm_medium=syndication&utm_campaign=View-Original ("[W]e expect the FCC to issue a new omnibus order over the coming months that will likely touch upon several core TCPA issues, including the appropriate breadth of the ATDS definition."); Krasovec, Gupta, & Goldsmith, *Fall is for Falling Leaves, Thanksgiving, and TCPA Omnibus II?"* (October 15, 2018), available at https://consumerfinancialserviceslaw.us/fall-is-for-falling-leaves-thanksgiving-and-tcpa-omnibus-ii/ ("While we don't know for certain when the FCC is going to take action, sometime in November seems plausible.").

November 10, 2016 (Dkt. No. 40), at ¶¶ 33–48.  3Seventy's messaging system allows its third-party users to create and initiate text messages to recipients chosen by the users.  *See* Declaration of John Wright, filed June 22, 2017 (Dkt. No. 68-1), at ¶ 14.  3Seventy does not provide its customers with lists of telephone numbers or otherwise select the recipients of customers' text messages.  *Id.* at ¶ 16.  Indeed, the undisputed evidence presented in the case demonstrates that none of the equipment used is capable of generating telephone numbers to receive text messages, whether randomly, sequentially or otherwise.  *Id.* at ¶ 24; Deposition of Plaintiff's Expert Randall A. Snyder, filed April 16, 2018 (Dkt. No. 129-3), at 115:25–116:6 (acknowledging that the 3Seventy Platform does not have "the present capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers").

### B. The D.C. Circuit's Decision in *ACA International*

The FCC issued regulations in 2015 that expanded the definition of an ATDS in several ways, and those regulations were subsequently challenged before the Court of Appeals for the D.C. Circuit.  In March of this year, the D.C. Circuit set aside the FCC's interpretation of the TCPA with respect to what constitutes an ATDS, finding that the interpretation was "an unreasonably, and impermissibly, expansive one."  *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 700 (D.C. Cir. Mar. 16, 2018).  Specifically, the court was concerned that the FCC's interpretation "would appear to subject ordinary calls from any conventional smartphone to the [TCPA]'s coverage."  *Id.* at 692.

In the absence of any valid FCC regulations on the issue, the TCPA alone now defines an ATDS.  Under the statute, the term "'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

### C. Defendant HMC's Motion for Summary Judgment

In April 2018, subsequent to the D.C. Circuit's ruling in *ACA International*, Defendant HMC filed a motion for summary judgment, asking this Court to decide, as a matter of law under the language of the TCPA, that Defendants did not use an ATDS to send the text messages at issue because it is undisputed that the 3Seventy Platform did not have the ability to generate

numbers using a random or sequential number generator. *See* Dkt. No. 128. A hearing was held on May 15, 2018, at which time this Court took the matter under advisement. *See* Minute Entry, dated May 15, 2018 (Dkt. No. 145).

### D. The Ninth Circuit's Decision in *Marks v. Crunch San Diego*

Recently, on September 20, 2018, the Ninth Circuit issued a ruling in *Marks v. Crunch San Diego*, in which it interpreted the TCPA's definition of an ATDS. The court found that the statutory language was ambiguous. *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 WL 4495553, at *8 (9th Cir. Sept. 20, 2018). As a result, the court looked at the context and structure of the TCPA to supply meaning, finding that Congress had intended to regulate devices that "had the basic function of being automatic, i.e., had 'the capacity to dial numbers without human intervention.'" *Id.* at *4. Ultimately, the court concluded "that the statutory definition of ATDS is *not* limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." *Id.* at *9.

The *Marks* decision adopts a reading of the statute that seems to be at odds with the D.C. Circuit Court's decision in *ACA International*, wherein the court rejected the FCC's regulations that essentially made all smartphones fall within the ATDS definition. *See ACA Int'l*, 885 F.3d 687, 698–700. The *Marks* decision—defining every device that can store numbers and automatically dial them as an ATDS—also could lump every smartphone into its definition.

In addition, the *Marks* decision left several critical issues unresolved, including the amount of human intervention that would render equipment non-automatic and whether a device needed to have present capacity to perform functions, as opposed to future or potential capacity. *See id.* at *9 & n.9.

Furthermore, the *Marks* decision created a division within the circuits by declining to follow the decision of the Court of Appeals for the Third Circuit in *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116, 120 (3d Cir. 2018), wherein the court found that random or sequential number generation is a required function of an ATDS under the plain language of the TCPA.

The defendant in *Marks* has since filed a Petition for Rehearing En Banc, which is

5

HMC's MEMO IN SUPPORT OF ITS MOTION TO STAY

currently pending.

### E. The FCC's Active Consideration of the ATDS Definition

After the D.C. Circuit's ruling in *ACA International*, 18 organizations from a wide variety of industries jointly petitioned the FCC for a declaratory ruling, asking it to (1) confirm that, in order to be an ATDS, equipment must use a random or sequential number generator to store or produce numbers and dial those numbers automatically, *i.e.*, without human intervention, and (2) find that only calls made using actual ATDS capabilities are subject to the TCPA's restrictions. *See* Joint Trade Petition, supra note 1. Shortly thereafter, the FCC issued its First Public Notice requesting comments on, among other things, the issues raised by the Joint Trade Petition:

> [W]e seek comment on what constitutes an "automatic telephone dialing system."…We seek comment on how to interpret "capacity" in light of the [ACA International] court's guidance. …We seek further comments on the functions a device must be able to perform to qualify as an [ATDS]. …How "automatic" must dialing be for equipment to qualify as an [ATDS]? Does the word "automatic" "envision non-manual dialing of telephone numbers"? Must such a system dial
> numbers without human involvement? …[D]oes the bar against "making any call using" an [ATDS] apply only to calls made using the equipment's [ATDS] functionality? …If a caller does not use equipment as an [ATDS], does the statutory prohibition apply?

First Public Notice, supra note 2, at *1–3. And then, after the *Marks* decision was issued last month, the FCC sought further, expedited comment by issuing its Second Public Notice:

> Specifically, we seek further comment on what constitutes an "automatic telephone dialing system." . . . The *Marks* court declared "the statutory language ambiguous on its face" as to the question of whether the phrase "using a random or sequential number generator" modifies both "store" and "produce." The *Marks* court then read the phrase "using a random or sequential number generator" not to apply to equipment that has the capacity "to store numbers to be called." **In other words, the court interpreted the statutory language expansively so that an "automatic telephone dialing system" is "not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to store numbers and to dial stored numbers automatically." The *ACA* court, however, held that the TCPA unambiguously foreclosed any interpretation that "would appear to subject ordinary calls from any conventional smartphone to the Act's coverage."**

> We seek further comment on how to interpret and apply the statutory definition of automatic telephone dialing system, including the phrase "using a random or sequential number generator," in light of the recent decision in *Marks*, as well as how that decision might bear on the analysis set forth in *ACA International*. . . . **Does the interpretation of the *Marks* court mean that any device with the capacity to dial stored numbers automatically is an automatic telephone dialing system? What devices have the capacity to store numbers? Do smartphones have such capacity? What devices that can store numbers also have the capacity to automatically dial such numbers? Do smartphones have such capacity? In short, how should the Commission address these two court holdings?** We also seek comment on any other issues addressed in the *Marks* decision that the Commission should consider in interpreting the definition of an ""automatic telephone dialing system."

Second Public Notice, supra note 2, at *1 (emphasis added). There can be no question that the FCC is seeking industry input on what constitutes an ATDS and engaging in its designated rulemaking function. The FCC's ultimate decision on these numerous issues will likely be dispositive of the ATDS issue raised in this case.

## **ARGUMENT**

Under these circumstances, the Court has two independent bases for staying this case pending the FCC's decision. The doctrine of primary jurisdiction counsels restraint in these circumstances. Moreover, the Court may exercise its inherent authority to manage its docket by staying the case to avoid unnecessary expenditure of judicial and party resources and potentially conflicting rulings.

**I.     The Court Should Stay This Litigation Under the Primary Jurisdiction Doctrine.**

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Invocation of the doctrine does not mean that a court lacks jurisdiction; "[r]ather, the doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id.* In determining whether to invoke the doctrine, courts consider

> (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (internal quotation omitted). The Ninth Circuit has stressed that the doctrine "*should* be used 'if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.'" *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1075–76 (9th Cir. 2010) (quoting *Clark,* 523 F.3d at 1114) (emphasis added). The Ninth Circuit has also applied the doctrine where "there exists a substantial danger of inconsistent rulings." *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1049 (9th Cir. 2011). Ultimately, the primary jurisdiction doctrine "seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime." *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003).

**A.  This Case Requires Resolution of the Definition of an ATDS.**

The first primary jurisdiction doctrine consideration—the need to resolve an issue—easily supports a stay here. In resolving class certification and summary judgment, the Court will need to address Plaintiff's core legal theory that the 3Seventy Platform is an ATDS. For, if an ATDS was not used, there is no liability under the TCPA. This is a question that arises from the TCPA, and currently is pending before and properly resolved by the FCC. If the FCC finds that, in order to be an ATDS, equipment must use a random or sequential number generator to store or produce numbers and dial those numbers without human intervention, or that only calls made using actual ATDS capabilities are subject to the TCPA's autodialer restrictions, then that determination will be binding on this Court. *See Luna v. Shac, LLC*, 122 F. Supp. 3d 936, 939 (N.D. Cal. 2015) ("[T]he Hobbs Act jurisdictionally divests district courts from ignoring FCC rulings interpreting the TCPA.").

Given that the FCC is considering a core issue that not only needs to be decided in this

8

HMC's MEMO IN SUPPORT OF ITS MOTION TO STAY

litigation, but likely is dispositive of Plaintiff's claims, the first primary jurisdiction doctrine factor weighs heavily in favor of a stay. *See Lambert v. Buth-Na-Bodhaige, Inc.*, No. 2:14-CV-00514-MCE, 2014 WL 4187250, at *3 (E.D. Cal. Aug. 21, 2014) (granting stay of TCPA claim under primary jurisdiction doctrine where petition before the FCC would affect plaintiff's claim).

### B. The FCC Has Jurisdiction to Administer and Interpret the TCPA.

The second primary jurisdiction doctrine criterion—whether the issue has been placed within the jurisdiction of the agency having authority to address it—also weighs heavily in favor of a stay. It is beyond dispute that the FCC has jurisdiction to decide whether certain technology constitutes an ATDS. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009) ("Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA.") (citing 47 U.S.C. § 227(b)(2)).

Furthermore, the issues have been placed within the jurisdiction of the FCC, which is currently engaged in the process of rulemaking. Having before it the Joint Trade Petition, the FCC has also issued two Public Notices for comment on the ATDS issues implicated in this case (the comment periods for which have since expired), and is expected to issue a ruling and omnibus regulations within the next few months. *See Lambert*, 2014 WL 4187250, at *3 (granting stay after finding that a petition affecting the plaintiff's claim was "already before the FCC and the comment period ha[d] expired"). Accordingly, the second primary jurisdiction factor supports the issuance of a stay here.

### C. The FCC's Regulatory Authority Over the TCPA Subjects Industries to a Comprehensive Regulatory Scheme That Requires Expertise or Uniformity in Administration.

The third and fourth primary jurisdiction doctrine factors—the existence of a comprehensive regulatory scheme that requires expertise or uniformity in administration—further support a stay. Indeed, this Court has previously acknowledged that "the FCC has regulatory authority pursuant to [the TCPA] subjecting the industry to a comprehensive regulatory scheme that requires expertise or uniformity in administration." *Matlock v. United Healthcare Servs., Inc.*, No. 2:13-CV-02206-MCE-EF, 2014 WL 1155541, at *2 (E.D. Cal. Mar. 20, 2014); *see also Pieterson v. Wells Fargo Bank, N.A.*, No. 17-CV-02306-EDL, 2018 WL

3241069, at *3 (N.D. Cal. July 2, 2018) ("It is widely accepted that the FCC's regulatory authority over the TCPA subjects industries to a comprehensive regulatory scheme that requires expertise or uniformity in administration.'"). Thus, these factors are clearly met.

In addition, the TCPA is a statute within the FCC's *particular* field of expertise, and—given that the definition of ATDS is proving to be a complex, technical, and policy-driven question—resolution of issues of statutory interpretation in this regard should be given over to the FCC's substantial expertise and discretion. *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 467 (6th Cir. 2010) ("Only the FCC can disambiguate the word[s]" in the TCPA and "all we could do would be to make an educated guess.") (cited with approval by this Court in *Lambert*, 2014 WL 4187250, at *2). The FCC has technical, TCPA-related expertise that is perfectly suited for evaluating complicated and ever-changing dialing technology, and such technologies' uses in businesses' everyday operations. *Id.* at 467; *see also Hart v. Comcast of Alameda*, No. 07-6350, 2008 WL 2610787, at *2 (N.D. Cal. June 25, 2008) (staying TCPA case where the FCC was considering petitions on "the precise issue raised by plaintiff" and, thus, "is already using its recognized expertise to consider some of the exact questions placed before the court here, in an effort to promote uniformity in . . . regulation").

Indeed, the *Marks* decision has made it clearer than ever that the FCC's expertise is needed in defining an ATDS. While it is true that some courts within this circuit have formerly taken it upon themselves to interpret the statutory language *without* the benefit of guidance from the FCC, before the issuance of its 2015 regulations, those courts did so in part based on previous Ninth Circuit rulings that the statutory language was unambiguous and susceptible to a plain language interpretation. *See, e.g.*, *Harnish v. Frankly Co.*, No. 5:14-CV-02321-EJD, 2015 WL 1064442, at *4 (N.D. Cal. Mar. 11, 2015) ("[T]he definition of an ATDS does not involve a technical or policy consideration within the FCC's particular field of expertise <u>since the Ninth Circuit has already stated that the statutory language is clear and unambiguous</u>.") (emphasis added). However, the *Marks* decision made it clear that the statutory definition of an ATDS is actually <u>ambiguous</u> and that it cannot be interpreted without reference to Congressional policy. *Marks*, 2018 WL 4495553, at *8. And even then, the *Marks* court did not delve into the more

HMC's MEMO IN SUPPORT OF ITS MOTION TO STAY

technical aspects of the ATDS definition, such as precisely what amount of human intervention required to operate a device would render the device non-automatic. This is precisely the kind of issue that is technology- and policy-driven. And now that courts can no longer rely on the recently-vacated FCC regulations, interpreting *every* aspect of the statutory ATDS definition would be a matter of first impression. *See id.* at *9 and n.9 (reaching only the "random or sequential number generator" issue, but leaving several other critical issues unresolved, including the amount of human intervention that would render equipment non-automatic and whether a device needed to have present capacity to perform functions, as opposed to future or potential capacity).

Furthermore, the necessity of uniform administration when it comes to the definition of an ATDS is highlighted by the multitude of conflicting decisions that have arisen across the country in the past three years, while the law has been in a state of flux. *Wright v. Lyft, Inc.*, No. C14-421 MJP, 2015 WL 12977403, at *3 (W.D. Wash. Jan. 6, 2015) ("[C]ourts have taken varied approaches to interpreting 'ATDS' creating a conflicting body of law.…These rulings demonstrate both the need for uniform administration of the TCPA—particularly uniform interpretation of 'ATDS'—and the need for guidance from the FCC."); *see also Brickman v. Facebook, Inc.*, No. 16-CV-00751-TEH, 2017 WL 1508719, at *3 (N.D. Cal. Apr. 27, 2017) ("In regard to the question addressing the definition of an ATDS, it is clear that courts in this Circuit have reached conflicting interpretations."). As noted above, there is already a divide in the circuit courts. *Compare Marks*, 2018 WL 4495553, with *Dominguez, Inc.*, 894 F.3d at 120.

In short, the TCPA requires expertise and uniformity in administration because the statutory language is ambiguous and technology is constantly changing. Leaving the definition of an ATDS to the courts has resulted in a multitude of different decisions leading to extreme uncertainty in the law. For this reason, the Court should invoke the primary jurisdiction doctrine and stay this case pending the FCC's forthcoming regulation.

### D. Any Delay Would Likely Be Minimal and Is Outweighed by Principles of Judicial Economy.

While courts should also consider whether invoking primary jurisdiction would "needlessly delay the resolution of claims," "efficiency" is really the "deciding factor" in determining whether invocation of the primary jurisdiction doctrine is appropriate. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015). Thus, where an agency is actively working on an issue and is poised to deliver guidance, it is more efficient to wait for that guidance, particularly where proceeding in the absence of such guidance would increase the chances of a decision that could conflict with later regulations. *See id.* (invoking primary jurisdiction where agency was taking action and guidance was forthcoming); *Mendoza v. UnitedHealth Grp. Inc.*, No. 13-1553 PJH, 2014 WL 722031, at *2 (N.D. Cal. Jan. 6, 2014) (finding that, given the anticipation that the FCC would resolve the issue "relatively soon," "the benefit to be provided by FCC guidance on potentially dispositive issues in [the] litigation outweigh[ed] the benefit to plaintiff in allowing the action to proceed"); *Lambert*, 2014 WL 4187250, at *3 (finding that "judicial economy weigh[ed] against issuing any decisions that may be undermined by anticipated rulings by the FCC").

Here, the FCC is currently engaged in the rulemaking process and may issue a ruling as early as next month, according to industry reports. Thus, any delay in the litigation would likely be minimal. More importantly, staying the case pending the FCC's anticipated "Omnibus II" regulation would promote judicial economy because it would prevent this Court from ruling prematurely on an issue within the purview of the FCC and on which it will shortly give guidance.

For these reasons, the Court should invoke the doctrine of primary jurisdiction and stay this case until the FCC issues its upcoming ruling and omnibus regulations. Since the D.C. Circuit's recent decision in *ACA International*, at least one court has stayed a TCPA action on primary jurisdiction grounds to await the FCC's anticipated ruling and regulations. *See Buhr v.*

HMC's MEMO IN SUPPORT OF ITS MOTION TO STAY

*ADT LLC*, No. 9:18-cv-80605-RLR (S.D. Fl. July 25, 2018) (Dkt. No. 40).[4]

**II.     The Court Should Stay This Litigation in the Exercise of Its Own Discretion.**

Alternatively, this Court can stay this case in the exercise of its own discretion. District courts have broad discretion to stay proceedings pending the resolution of independent proceedings elsewhere. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). A district court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

The factors district courts are to weigh in deciding whether to grant a request for a stay include "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (alterations added). As detailed below, each of these factors supports a stay of proceedings in this action.

**A. No Damage Will Result from the Court Entering a Stay of this Action.**

As a preliminary matter, Plaintiff's claims pose no bar to a stay of this matter. Plaintiff is seeking statutory money damages and injunctive relief. FAC, at ¶¶ 60–71. But a delay in the potential receipt of money damages is not a sufficient reason to justify denial of a stay. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268–69 (9th Cir. 1962) (holding that a delay in a party's pursuit of money damages is insufficient to support denial of a stay of proceedings). Additionally, a claim for injunctive relief does not warrant the denial of a stay where the alleged wrongful conduct has already ceased. *See Reynolds v. Time Warner Cable, Inc.*, No. 16-CV-6165W, 2017 WL 362025, at *2 (W.D.N.Y. Jan. 25, 2017); *Ramirez v. Trans Union, LLC*, No. 12-cv-00632-JSC, 2015 WL 6159942, at *2 (N.D. Cal. June 22, 2015). Although Plaintiff

---

[4] While the court entered a text order without a written opinion, this Court may take judicial notice of the ruling. *See Montegna v. Ocwen Loan Servicing, LLC*, No. 17-CV-00939-AJB-BLM, 2017 WL 4680168, at *3 (S.D. Cal. Oct. 18, 2017) (finding that taking judicial notice of a minute entry was appropriate and that "courts routinely grant judicial notice to court records and documents").

alleges he received unauthorized text messages through February 2016 (*see* FAC, at ¶ 26), Plaintiff is no longer receiving any allegedly unauthorized text messages from the A&W Text Club.[5] As a result, Plaintiff does not need injunctive relief.

Further, Plaintiff will not suffer any prejudice from a relatively short stay of these proceedings pending the FCC's forthcoming regulations. The period for submitting comments in response to the FCC's Public Notices has already expired, and industry experts anticipate a ruling and new regulations within the next few months.

Additionally, a stay will not have any meaningful impact on Plaintiff's ability to pursue his case since the parties have completed fact and expert discovery. As witnesses have already been deposed, a delay will not affect relevant witness memories. Moreover, both parties will benefit from the new FCC guidance in that it will narrow the issues for further dispositive motions in this case and any potential trial. Therefore, neither party will suffer damage or harm if the Court enters a stay of proceedings in this matter.

### B. HMC Will Suffer Hardship or Inequity if this Case Is Not Stayed.

If a stay is not granted, HMC—and Plaintiff, for that matter—will suffer harm in the form of unnecessary litigation fees and expenses and uncertain legal guidelines in this purported class action. This Court has previously found that a party can demonstrate hardship or inequity where failing to stay the proceedings could deprive that party of the opportunity to wait for another decision on a potentially controlling point of law. *Clayton v. Synchrony Bank*, 219 F. Supp. 3d 1006, 1011 (E.D. Cal. 2016). Indeed, *both* parties "suffer hardship in conducting… trial preparation in light of the uncertain[ty]" surrounding "the definition of an ATDS." *Errington v. Time Warner Cable Inc.*, No. 2:15-CV-02196, 2016 WL 2930696, at *4 (C.D. Cal. May 18, 2016). Numerous courts have granted stays for this reason. *See, e.g.*, *Reynolds*, 2017 WL 362025, at *2–3 (collecting cases).

### C. A Stay Will Enhance the Orderly Course of Justice.

Finally, a stay would enhance the orderly course of justice by promoting judicial economy, conserving both the Court's and parties' resources, and promoting uniformity of

---

[5] The A&W Text Club is not currently transmitting text messages to any of its members.

decision.  Indeed, absent a stay, and as discussed above, the Court risks issuing a decision that conflicts with, and is preempted by, the FCC's forthcoming ruling on the ATDS issues raised by the Joint Trade Petition and the FCC's Public Notices seeking comment.

A stay pending the FCC's rulings also would be in line with other courts that have stayed TCPA litigations based on their inherent powers to control their dockets.  *See, e.g.*, *Miller v. Directv, LLC*, No. 14-07579, 2015 WL 12656912, at *3 (C.D. Cal. Jan. 8, 2015) ("In the interests of conserving the parties' and the Court's resources and preventing inconsistent rulings and requests for reconsideration that may ensue, the Court instead sua sponte exercises its prudential authority to stay the action pending the FCC's resolution of the . . . Petitions"); *Fontes v. Time Warner Cable Inc.*, No. 14-cv-02060, 2014 WL 2153919, at *2 (C.D. Cal. May 19, 2014) ("A stay is appropriate because it increases the likelihood that the Court will be able to address the parties' arguments after the FCC has acted on the Petitions.").  Where the FCC is actively considering a potentially dispositive issue, the Court is well within its sound discretion to stay this action.  A stay will conserve judicial and party resources, prevent inconsistent rulings, and promote fairness in decisions.

## **CONCLUSION**

For the reasons detailed above, HMC requests that the Court enter a stay of proceedings in this matter pending the issuance of the FCC's forthcoming omnibus regulations.

DATED this 30th day of October, 2018.     **McKAY, BURTON & THURMAN**

                                            /s/ Jeremy C. Sink
David L. Bird
Jeremy C. Sink
*Attorneys for Harman Management Corporation*

# PROOF OF SERVICE

The undersigned declares: I am a resident of the State of Utah, over the age of eighteen years, and not a party to the within action. My business address is McKay Burton & Thurman, 15 W. South Temple, Suite 1000, Salt Lake City, Utah 84101. On the date shown below, I served a true and correct copy of the following document(s): **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HARMAN MANAGEMENT CORPORATION'S MOTION TO STAY**

on the following counsel of record via the Court's Electronic Case Filing system:

Trinette G. Kent
10645 North Tatum Blvd., Suite 200-192
Phoenix, AZ 85028
tkent@kentlawpc.com

Sergei Lemberg
Stephen Taylor
Lemberg Law LLC
43 Danbury Road
Wilton, CT 06897
slemberg@lemberglaw.com; staylor@lemberglaw.com

Adam D. Bowser
Arent Fox LLP
1717 K Street, NW
Washington, DC 20006
adam.bowser@arentfox.com

Jeffery Robert Makin
Arent Fox LLP
555 West Fifth Street, 48th Floor
jeffery.makin@arentfox.com

Rex Mann
Winston & Strawn LLP
2501 N. Harwood St., 17th Floor
Dallas, TX 75201
RMann@winston.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on this 30th day of October, 2018, at Salt Lake City, Utah.

/s/ Jeremy C. Sink