Sergei Lemberg (*PHV*)
Stephen F Taylor (*PHV*)
LEMBERG LAW LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
T.203-653-2250
F.203-653-3424
Email: slemberg@lemberglaw.com
Email: staylor@lemberglaw.com

Trinette G. Kent (State Bar No. 222020)
LEMBERG LAW, LLC
1333 Stradella Road
Los Angeles, CA 90077
T.480-247-9644
F.480-717-4781
Email: tkent@lemberglaw.com

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cory Larson, *on behalf of himself and all others similarly situated*,<br><br>              Plaintiff,<br><br>       vs.<br><br>Harman-Management Corporation; and 3Seventy, Inc.,<br><br>              Defendants. | Case No.:  1:16-cv-00219-DAD-SKO<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT**<br><br>Judge Dale A. Drozd<br>Hearing: July 16, 2019<br>Time: 9:30 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

BACKGROUND ......................................................................................................... 1

TERMS OF THE SETTLEMENT ................................................................................. 3

POINT I - THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY
APPROVED ............................................................................................................... 8

    I.      STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION
          SETTLEMENT............................................................................................ 8

    II.     THE SETTLEMENT AGREEMENT WARRANTS PRELIMINARY APPROVAL ..... 9

         A.     The Settlement Agreement Is The Result of Engaged, Arm's-Length
              Negotiations Overseen By An Experienced Mediator ............................................ 9

         B.     The Settlement Agreement Is a Preferable Alternative to the Risks Through
              Continued Litigation ................................................................................. 10

         C.     There are No Obvious Deficiencies to the Settlement Agreement ....................... 12

         D.     The Settlement Agreement Does Not Provide Unwarranted Preferential
              Treatment to Any Segment of the Class ................................................................ 12

         E.     The Settlement Agreement Provides a Substantial Benefit to Settlement Class
              Members and Falls Within a Range of Possible Approval .................................. 14

POINT II – THE SETTLEMENT CLASS SHOULD BE CERTIFIED .......................................... 15

    I.      LEGAL STANDARD FOR CONDITIONAL CERTIFICATION OF CLASS
          ACTION FOR SETTLMENT PURPOSES ................................................... 15

    II.     FED. R. CIV. P. 23(A) REQUIREMENTS................................................... 16

         A.     Numerosity is Satisfied ............................................................................ 16

         B.     Commonality is Satisfied ......................................................................... 16

         C.     Typicality is Satisfied............................................................................... 17

         D.     Adequacy of Representation is Satisfied................................................... 18

    III.    Fed. R. Civ. P. 23(b)(3) Requirements ...................................................... 18

         A.     Common Questions of Law and Fact Predominate ................................... 19

         B.     Superiority is Satisfied ............................................................................. 19

POINT III – THE PROPOSED NOTICE AND NOTICE PLAN ARE REASONABLE.................. 20

CONCLUSION.......................................................................................................... 21

## **TABLE OF AUTHORITIES**

**Cases**

*Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012).......... 13

*Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) ............................................ 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) .......................................... 15

*Avio, Inc. v. Alfoccino, Inc.*, 2015 WL 8731983 (E.D. Mich. Dec. 14, 2015) .................................... 17

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010)..................................................... 15

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) ............................................ 12

*Brown v. Rita's Water Ice Franchise Co. LLC*, 2017 WL 1021025 (E.D. Pa. Mar. 16, 2017) .......... 18

*Butto v. Collecto Inc.*, 290 F.R.D. 372 (E.D.N.Y. 2013) ..................................................................... 18

*Cal. Rural Legal Assistance, Inc. v. Legal Servs.* Corp., 917 F.2d 1171 (9th Cir. 1990)................. 17

*CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) .............................. 19

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........................................................ 8

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015)..................................................... 14

*Dakota Med., Inc. v. RehabCare Grp., Inc.*, 2017 WL 13988162 (E.D. Cal. Apr. 19, 2017) .... 8, 9, 13

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 100 S. Ct. 1166 (1980)....................................... 20

*Duchene v. Westlake Servs., LLC*, 2016 WL 6916734 (W.D. Pa. July 14, 2016) .............................. 18

*Estrada v. iYogi, Inc.*, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ................................................... 13

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ...................................... 17, 18

*Ferrington v. McAfee, Inc.*, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ......................................... 14

*Forcellati v. Hyland's, Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)........................................ 14

*Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014)................. 21

*General Telephone Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) .......................................................... 19

*Green v. Service Master*, 2009 WL 1810769 (N.D. Ill. June 22, 2009) ............................................ 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................................. 17

*In re AMF Bowling*, 334 F. Supp. 2d 462 (S.D.N.Y. 2004) ............................................................... 10

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ............. 13, 15

*In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628 (C.D. Cal. 2009) ................................................ 16

*In re Flonase Antitrust Litig.*, 291 F.R.D. 93 (E.D. Pa. 2013) ............................................... 21

*In re High-Tech Employee Antitrust Litig.*, 2013 WL 632881 (N.D. Cal. Oct. 30, 2013) ................. 9

*In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136 (D.N.J. 2013) ................................................ 21

*In re Mut. Funds Inv. Litig.*, 2011 WL 1102999 (D. Md. Mar. 23, 2011) .......................................... 21

*In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) .......................... 10

*In Re: Convergent Telephone Consumer Protection Act Litigation*, No. 3:13-md-02478 (D. Conn., November 10, 2016) .......................................................................................................... 18

*James v. JPMorgan Chase Bank, N.A.*, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ................... 14

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007) ................................................... 16

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) ............................................................. 13

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ...................................... 19

*Lavigne v. First Community Bancshares, Inc., et al.*, 2018 WL 2694457 (D.N.M. June 5, 2018) ...................................................................................................................................... 18

*Malta v. Fed. Home Loan Mortg. Corp.*, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ........... 17, 19, 21

*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J. Sept. 10, 2009) ..................................... 21

*Munday v. Navy Federal Credit Union*, ECF No. 60, 15-cv-01629 (C.D. Cal., July 14, 2017) ........ 18

*Nwabueze v. AT & T Inc.*, 2013 WL 6199596 (N.D. Cal., Nov. 27, 2013) ......................................... 6

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998) ................................................ 16

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ...................................................................... 17

*Perez v. Asuiron Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ...................................................... 21

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965 (1985) .......................................... 21

*Retta v. Millennium Prod., Inc.*, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) .................................. 5

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................................................... 9

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ...................................... 15

*Saf-T-Gard International, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312 (N.D. Ill. 2008) ............. 11

*Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ....................................... 9

*Seekamp v. It's Huge, Inc.*, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ......................................... 18

*Spann v. J.C. Penney Corp.*, 2016 WL 297399 (C.D. Cal. Jan. 25, 2016) ......................................... 9

*Steinfeld v. Discover Fin. Servs.*, 12-cv-1118 (N.D. Cal. Mar. 10, 2014) ......................................... 13

MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL

*Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668 (D. Wyo. 2011) ................................ 11

*Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229 (S.D. Ill. 2011) ................... 11

*Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...................... 9

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011) ............................................ 17

West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ......................... 12

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ................................. 17, 20

*Wright v. Nationstar Mortage LLC*, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) ................. 13

*Zimmerman v. Portfolio Recovery Associates, LLC*, 276 F.R.D. 174 (S.D.N.Y. 2011) ................... 19

**Statutes**

47 U.S.C. § 227(b)(1)(A)(3) ............................................................................................................... 1

**Other Authorities**

Fed. R. Civ. P. 23(a) ......................................................................................................................... 3

Fed. R. Civ. P. 23(b)(3) ..................................................................................................................... 3

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................................... 3

**Treatises**

4 Newberg on Class Actions § 11.41 (4th ed. 2002) ......................................................................... 8

Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002) ........................ 9

Manual for Complex Litig. § 13:13 (5th ed. 2011) ............................................................................ 8

*Manual for Complex Litigation* (4th) § 21.632 ................................................................................ 15

Plaintiff Cory Larson ("Plaintiff") respectfully submits this Memorandum in Support of his Motion to Preliminarily Approve Class Action Settlement.  Plaintiff respectfully requests that the Court preliminarily approve the terms of the Settlement Agreement (attached as <u>Exhibit A</u> to this memorandum), conditionally certify a class for purposes of settlement (the "Settlement Class"), appoint Plaintiff as the Settlement Class Representative, appoint Sergei Lemberg, Stephen F. Taylor and the law firm Lemberg Law, LLC, as settlement Class Counsel, approve the form, content and method of delivering notice to the Settlement Class as set out in the Settlement Agreement, and schedule a Final Approval hearing in accordance with the deadlines proposed in the Settlement Agreement.  A proposed Preliminary Approval Order in the form approved by the Parties is included as <u>Exhibit C</u> to the Settlement Agreement and is submitted herewith for the Court's consideration.

## BACKGROUND

Plaintiff initiated this action on February 17, 2016, alleging for himself and others similarly situated that Defendant Harman-Management Corporation ("Harman" with Plaintiff, the "Parties") and 3Seventy, Inc. ("3Seventy") violated the Telephone Consumer Protection Act ("TCPA") by sending telemarketing text messages to putative class members' cellular telephones with an automatic telephone dialing system.  Plaintiff claims those messages – sent as part of a marketing program called the "A&W Text Club" – violated 47 U.S.C. § 227(b)(1)(A)(3) and that Defendants were liable for statutory damages of $500 for each message made in violation of the TCPA.[1]

Over the past three years, the Parties have heavily litigated this case. The discovery has been voluminous. Plaintiff has reviewed over 46,000 pages of documents produced by Harman, 3Seventy or from third parties.  The document production included emails, contracts, system manuals, slideshows, reports of the progress of the A&W Text Club, audiovisual materials such as videos and web advertisements. 3Seventy produced additional exhaustive records (produced as spreadsheets) detailing text messages sent to putative class members.  In addition to the extensive document production and review, Plaintiff took seven depositions of Harman, 3Seventy and non-party AFA

---

[1] Plaintiff's claims against Defendant 3Seventy, Inc., have been dismissed without prejudice with such dismissal to become with prejudice upon Final Approval of the Class Action Settlement and such approval becoming Final.

Krause employees. Further, Harman took the deposition of the Plaintiff and performed a forensic examination of his cellular telephone. Plaintiff has supplied an expert report and Harman deposed Plaintiff's expert. The foregoing discovery was conducted over years with myriad meet and conferrals amongst the Parties and court intervention to compel further responses. (Doc. No. 83, 88, 92).

So too, motion practice has been extensive. At the outset, Harman and 3Seventy sought to dismiss Plaintiff's claims and to strike his class allegations. (Doc. No. 26-1; 27 (3Seventy joinder)). The Court denied the motion. (Doc. No. 38). Harman filed three (3) motions to stay the matter outright (Doc. No. 64, 108, 167) with the first and third attempts denied and the second attempt withdrawn. The Parties fully briefed (1) Plaintiff's Motion for Class Certification (Doc. No. 98, 132, 134, 142, 143), (2) 3Seventy's Motion for Summary Judgment (Doc. No. 101, 135, 140) and (3) Harman's First Motion for Summary Judgment (Doc. No. 128, 136, 141). Harman filed its Second Motion for Summary Judgment on November 30, 2018 (Doc. No. 174); briefing on the same was adjourned while Harman and Plaintiff discussed settlement.

In December 2018, Harman and Plaintiff agreed to engage in mediated settlement discussions. They engaged the services of the Hon. Morton Denlow of JAMS Chicago, an experienced mediator and retired United States Magistrate Judge for the Northern District of Illinois. The Parties provided Judge Denlow with detailed mediation briefs and conducted a full day of negotiations on February 19, 2019. The Parties did not reach agreement during that session. However, further discussions culminated in an agreement in principle to settle the class claims asserted by Plaintiff in this case. Subsequent arm's-length negotiations have produced an agreement on the specific terms set forth in the Settlement Agreement.[2]

---

[2] The executed Settlement Agreement is attached hereto as Exhibit A. Appended to the Settlement Agreement and incorporated therein are the following exhibits:

Exhibit A – the "Claim Form"
Exhibit B – the "Long Form Notice"
Exhibit C – the "Preliminary Approval Order"
Exhibit D – the "Short Form – Postcard Notice"
Exhibit E – the "Final Approval Order"

Plaintiff now presents those terms for the Court's preliminary approval. Plaintiff asks that the Court enter the Preliminary Approval Order attached as <u>Exhibit C</u> to the Settlement Agreement to (i) conditionally certify the Settlement Class for purposes of settlement; (ii) appoint Plaintiff as the Settlement Class Representative; (iii) appoint Sergei Lemberg and Stephen F. Taylor of Lemberg Law, LLC, as Class Counsel; (iv) preliminarily approve the terms of the Settlement Agreement; (v) approve the form, content and method of delivering notice to the Settlement Class as set out in the Settlement Agreement as "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)); and (vi) schedule a Final Approval hearing in accordance with the deadlines proposed in the Settlement Agreement.

The Settlement Agreement was arrived through arm's-length negotiations by experienced counsel and after extensive discovery.  The Settlement Agreement does not provide preferential treatment to any subset of the Settlement Class.  The Settlement Class exceeds the certification requirements of Fed. R. Civ. P. 23(a) and (b)(3) and the Settlement Class is more than adequately represented by Class Counsel.  Moreover, the Settlement Agreement provides for excellent relief for the Settlement Class for these disputed claims under the TCPA and warrants preliminary approval and notice to the Settlement Class Members.

## **TERMS OF THE SETTLEMENT**

1. <u>Class Definition</u>

The Settlement Class is defined to include:

All individuals and entities who were sent text messages from, or related to, the A&W Text Club between February 17, 2012 and the date of entry of the Preliminary Approval Order.

*See Settlement Agreement*, Art II ¶ 32.

Based on the text message records produced by 3Seventy in the course of discovery, 232,602 telephone numbers correspond with the class definition reflecting all texts sent during the life of the A&W Text Club program from March, 2012, through the end of the program in April 18, 2016. (Declaration of Stephen Taylor ¶ 12).

### 2. Benefits to Settlement Class Members

First, under the terms of the Settlement Agreement, each Class Member can claim an equal share of a $4,000,000.00, non-reversionary, Settlement Fund. *See Settlement Agreement*, Art III ¶ 1.a.   Settlement Class Members who timely submit a valid claim form will receive a pro-rata distribution from the settlement fund, after the Attorneys' Fees and Costs, any Incentive Award to the Named Plaintiff, and any Settlement Administration Costs are deducted from the Settlement Fund and the Settlement Administrator reviews all Claim Forms to determine a final number of claimants. *Id*.   If money remains in the Settlement Fund from un-cashed benefit checks (checks sent to claiming Settlement Class members which the members do not cash or deposit), the Settlement Administrator shall, if administratively feasible, make a second distribution of the settlement fund to those who did claim their checks. *Id*. ¶ 1.f. If the cost of such distribution is not feasible, the remaining amounts in the fund will go to a *cy pres* recipient nominated by the Parties and approved by the Court at the Final Approval stage.

Second, this action also has resulted in prospective relief to class members.   For a period of forty-eight (48) months following the Effective Date, and subject to changes in applicable law, except to the extent of employees and affiliates and their employees, Harman agrees not to cause marketing text messages to be sent to individuals and entities without first obtaining the prior express written consent of the recipient. *See Settlement Agreement*, Art III ¶ 5.

### 3. Claim Form

To receive any settlement benefits, Settlement Class Members will be required to complete and submit a short Claim Form certifying that they wish to claim their share of the Settlement Fund. *Settlement Agreement*, Art III ¶ 1(c & d) (*Settlement Agreement* Exhibit A (website version) & Exhibit D (mail Notice version)).   A Claim Form will be included with the Notice or can be found and filed on-line at a dedicated website.   Claim Forms will be considered timely if they are submitted electronically or postmarked by the Claims Deadline, 90 days after notice is sent. *See Settlement Agreement*, Art I ¶ 2, Art III ¶ 1.c.

4. <u>Settlement Class Representative and Class Counsel; Attorneys' Fees and Incentive Award</u>

The Settlement Agreement provides that named Plaintiff Cory Larson will be appointed as Settlement Class Representative and that Sergei Lemberg and Stephen F. Taylor of Lemberg Law, LLC will be appointed as Settlement Class Counsel. *Settlement Agreement*, Art I ¶¶ 4 & 25.

The Settlement Agreement provides that Cory Larson may apply to the Court for an Incentive Award for his efforts on behalf of the Settlement Class and Class Counsel may apply for an award of Attorneys' Fees and Costs from the Settlement Fund. *Settlement Agreement*, Art VI ¶ 1.

While the Settlement Agreement does not provide for any specific incentive or fee award, Class Counsel will apply for an Incentive Award of up to $10,000 for the Class Representative and of up to 1/3 of the Settlement Fund ($1,333,333.33) in Class Counsel Fees. (Taylor Decl. ¶ 13).

Application for the Incentive Award and reimbursement of Class Counsel Fees and expenses shall be made thirty (30) days before the Objection Deadline. *Settlement Agreement*, Art VI ¶ 1.

The Court and only the Court shall determine the amount of Attorneys' Fees and Costs and any Incentive Award in this action. *Id.*  Any award of Attorneys' Fees and Costs or an Incentive Award shall be paid from the Settlement Fund prior to the *pro rata* distribution of benefits to the Settlement Class. *Settlement Agreement*, Art VI ¶ 1.a&b.

5. <u>Releases</u>

In exchange for the benefits of the Settlement, Plaintiff has agreed to dismiss this litigation with prejudice as to himself and all Settlement Class Members. *Settlement Agreement*, Art V ¶ 1(a). Plaintiff and all members of the Settlement Class who do not timely opt out will release the Released Parties from all claims arising out of text messages sent to Settlement Class Members relating to the A&W Text Club. *Id.*  Art V ¶ 1.b&c.

Defendant 3Seventy is a Released Party even though it is not contributing to the Settlement. It is appropriate to release third-parties to class action settlements where the released claims arise from the same legal or factual predicate. *See, e.g.*, *Retta v. Millennium Prod., Inc.*, 2017 WL 5479637, at *8 (C.D. Cal. Aug. 22, 2017) (overruling objection to class settlement with manufacturer which released claims against third-party retailers in the chain of commerce where claims were based on the same factual allegations) (the objection is "meritless because the purpose

of the settlement is to prevent duplicative litigation of identical claims"); *Nwabueze v. AT & T Inc.*, 2013 WL 6199596, at *10 (N.D. Cal., Nov. 27, 2013) (overruling objection to release of third-parties in class settlement) ("The law evinces a clear preference for settlement and compromise in the class action context."). Here, all claims arise from the same A&W Text Club messages. Harman and 3Seventy contest liability as to Plaintiff and also as to each other raising indemnification issues which could impact this litigation and class claims absent settlement.  From Plaintiff's perspective, the Settlement Benefits (addressed below) are substantial and releasing 3Seventy, a small company of limited means with no insurance covering this action, is in the best interests of the Settlement Class in order to achieve these benefits.

6.  Notice

    Written notice of the proposed settlement will be provided to the Settlement Class via mail, sent no later than 30 days after the Court's entry of an order granting preliminary approval of the settlement. *Settlement Agreement*, Art III ¶ 2.a. (*Settlement Agreement* Exhibit D (the Postcard Notice)).

    The Parties have selected KCC Class Action Services as their Settlement Administrator. KCC's qualifications and the services it will provide as administrator are detailed in the Declaration of Carla A. Peak submitted herewith.  Total Settlement Administration Costs in this matter are estimated to be $209,557 (Taylor Decl. ¶ 10).  These costs will be deducted from the Settlement Fund.

7.  Opt-Out Rights

    Members of the Settlement Class can opt out of the class by sending a written request for exclusion to the Settlement Administrator. *Settlement Agreement*, Art IV ¶ 4.  Any individual opt-out notices must be postmarked no later than 90 days after commencement of the Notice Plan.  Also by that time, any Class Member who wishes to object to the Settlement Agreement must file with the Court a written notice of the objection, along with supporting papers setting forth the objector's grounds for objection. *Settlement Agreement*, Art IV ¶ 6.

8. <u>Proposed Deadlines</u>

The Settlement Agreement provides that Class Counsel will file their brief in support of Final Approval of the Settlement Agreement 14 days before the Final Approval Hearing. *Settlement Agreement*, Art IV ¶ 7(c).

The following table sets forth the important deadlines proposed in the Settlement Agreement and are also stated in the proposed Preliminary Approval Order:

| EVENT | SCHEDULED DATE |
|---|---|
| Notice mailing deadline (commencement of Notice Plan) | 30 days after entry of Preliminary Approval Order |
| Attorney's Fees and Costs application due by | 60 days following the Notice mailing deadline |
| Incentive Award application due by | 60 days following the Notice mailing deadline |
| Last day for Class Members to opt-out of Settlement | 90 days following the Notice mailing deadline |
| Last day for Class Members to Object to the Settlement | 90 days following the Notice mailing deadline |
| Last day to submit a Valid Claim Form | 90 days following the Notice mailing deadline |
| Briefs in support of Final Approval due by (including declaration regarding Notice by Settlement Administrator) | 14 days prior to the Final Approval Hearing |
| Harman to file certification regarding CAFA notice requirements | 14 days prior to the Final Approval Hearing |
| Final Approval Hearing | On the date set in paragraph 11, but no earlier than 150 days after the Notice mailing deadline |

The Settlement Agreement represents the Parties' best efforts to settle this litigation on terms that are fair and reasonable under the circumstances and that adequately protect the interests of the Settlement Class Members. Accordingly, the Settlement Agreement meets the threshold requirements for preliminary approval and the Settlement Class should be preliminary certified.

**POINT I**
**THE SETTLEMENT AGREEMENT**
**SHOULD BE PRELIMINARILY APPROVED**

**I.   STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).   Thus, the proposed Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

> Review of a proposed class action settlement ordinarily proceeds in three stages. *See* Manual for Complex Litigation (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers preliminary class certification. *Id.* Second, if the court makes a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.; see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

*Dakota Med., Inc. v. RehabCare Grp., Inc.*, 2017 WL 1398816, at *2 (E.D. Cal. Apr. 19, 2017). With this motion, Plaintiff initiates the first two stages and asks the Court to conduct a preliminary fairness evaluation, preliminary certify the class and direct notice to the class.

Generally stated, "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." Manual for Complex Litig. § 13:13 (5th ed. 2011); *see also Dakota Med., Inc., supra* (collecting cases). Thus, preliminary approval has both a procedural element (whether the settlement process appears to have been fair and non-collusive) and substantive element (whether the terms are comparable to similar cases).

Moreover, "[t]he Ninth Circuit does not follow the approach of other circuits that requires district courts to 'specifically weigh[ ] the merits of the class's case against the settlement amount and quantif[y] the expected value of fully litigating the matter.' []. Rather, the Ninth Circuit examines whether the settlement is 'the product of an arms-length, non-collusive, negotiated resolution[.]'" *Spann v. J.C. Penney Corp.*, --- F.R.D. ----, 2016 WL 297399, at \*8 (C.D. Cal. Jan. 25, 2016) (*quoting Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

## II.   THE SETTLEMENT AGREEMENT WARRANTS PRELIMINARY APPROVAL

Here, the Parties' Settlement Agreement is the product of serious and informed arm's-length negotiations and falls well within "the range of possible approval" sufficient to warrant its preliminary approval.

### A.   The Settlement Agreement Is The Result of Engaged, Arm's-Length Negotiations Overseen By An Experienced Mediator

Settlements that are the result of arm's-length negotiations among experienced counsel are "entitled to an initial presumption of fairness." *In re High-Tech Employee Antitrust Litig.*, 2013 WL 6328811, at \*1 (N.D. Cal. Oct. 30, 2013) (*citing* Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002)) (internal quotations omitted); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."). The involvement of a third-party neutral supports a finding that the process used to reach the settlement was not collusive. *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at \*6 (N.D. Cal. Nov. 21, 2012) (*citing Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at \*4 (N.D. Cal. Apr. 13, 2007)).

This settlement is the product of "serious, substantial, and arms-length negotiations." *Dakota Med., Inc.,* 2017 WL 1398816, at \*3. The negotiations were contentious, adversarial and took place before a well-respected mediator and a former magistrate judge, Judge Denlow of JAMS in Chicago, Illinois. Plaintiff's counsel, Lemberg Law, LLC, has been appointed class counsel in numerous consumer class actions and extensively litigates TCPA issues. (Lemberg Decl. ¶ 5; Taylor Decl. ¶ 5). That the Settlement was arrived at only after such arm's-length negotiations weighs in favor of preliminary approval. *In re AMF Bowling*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004) (the

participation of a respected mediator "gives [the court] confidence that [the negotiations] were conducted in an arm's-length, non-collusive manner"); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (fact that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion in the negotiating process).

Further, the negotiations were conducted after the Parties had each engaged in extensive and exhaustive discovery into the merits of class certification, class claims and the defenses. This included, but is not limited to (1) the production and review of over 46,000 pages of documents, (2) nine depositions, (3) expert reports and deposition, (4) the digital imaging of Plaintiff's cellular telephone. Further, negotiations occurred after extensive briefing on all material issues (merits and class certification). As a result, Class Counsel was well-positioned to evaluate the strengths and weaknesses of their case at the mediation to negotiate class-wide relief and is able to recommend approval of the agreement to the Court.

The Parties' agreement to settle this litigation reflects well-informed and engaged arm's-length bargaining with the assistance of a highly experienced mediator. The Settlement Agreement is not the product of collusion; to the contrary, it reflects the independent judgment of counsel and is the result of serious and substantive negotiations.

B. The Settlement Agreement Is a Preferable Alternative to the Risks Through Continued Litigation

In agreeing to a Settlement Fund of $4,000,000.00, Plaintiff and his counsel have considered the risks inherent to litigation and the various defenses available to Harman and 3Seventy. The reality that Plaintiff and the Settlement Class Members could end up recovering nothing or only a fraction of the settlement benefits if the Court did not certify a class or if Plaintiff failed to prevail was significant enough to convince Plaintiff and Plaintiff's counsel that the benefits of the settlement outweigh the gamble of continued litigation.

Plaintiff and his counsel knew that going forward there was a risk that the Court would decline to certify this case as a class action. A central issue in this case is whether there was prior express consent to call class members. Courts have offered differing opinions in other cases under

the TCPA regarding whether questions of consent require an individualized inquiry and thus prevent class certification. *Compare, e.g.*, *Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"), *and Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") (internal citations omitted), *with Green v. Service Master*, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) ("[T]he question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification.") (internal citations omitted), *and Saf-T-Gard International, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008) (holding that where "some number of faxes were sent on defendant's behalf (with or without defendant's explicit authorization), potentially to tens of thousands of recipients . . . reflects precisely the type of 'organized program' that lends itself to a common adjudication of the consent issue") (internal citations omitted), *and Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification."). These arguments were a substantial portion of Harman's and 3Seventy's oppositions to class certification. (Doc. No. 132 pp 10-15; Doc. No. 134 pp 8-16). Plaintiff strongly disagrees with those arguments as consent or the lack thereof can be determined on a class basis under the facts of this case and the A&W Text Club program. However, the arguments against certification were not insubstantial and Plaintiff and his counsel were aware that both Harman and 3Seventy would vigorously oppose certification in this Court or on appeal.

Additionally, Harman and 3Seventy both opposed Plaintiff's theory of individual and vicarious liability (Doc. No. 102 (3Seventy's Motion for Summary Judgment); Doc. No. 174 (Harman's Second Motion for Summary Judgment)) and whether the equipment at issue was an ATDS under the TCPA (Doc. No. 128 (Harman's First Motion for Summary Judgment); Doc. No.

174).  Again, Plaintiff believes his claims were strong and correct but recognizes the risk associated with continued litigation and appeals.

Further, as in any case, there is a substantial risk of losing at trial. And, even if Plaintiff did prevail, any recovery could be delayed for years by an appeal or series of appeals. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial). In contrast, the Settlement Agreement provides substantial relief to Settlement Class members without further delay.

C.  <u>There are No Obvious Deficiencies to the Settlement Agreement</u>

There are no obvious deficiencies to the Settlement Agreement.  It creates a non-reversionary common fund. Each Settlement Class Member is entitled to receive an equal share of the fund per telephone number to which text messages were sent.  Payment of attorneys' fees, costs, an incentive award and administrative costs are to be paid from the fund.  Settlement is not conditioned on any particular amount of a fee or incentive award. The Settlement Agreement and Notice Plan provide means for Settlement Class Members to opt-out or object.  A second distribution of unclaimed funds is provided for if it is cost-effective.  If it is not cost-effective, unclaimed funds will go to a *cy-pres* recipient to be approved by the Court.  Finally, the Released Claims are limited to claims arising from the text messages sent to Settlement Class Members. *Settlement Agreement*, Release Art V 1.c.

D.  <u>The Settlement Agreement Does Not Provide Unwarranted Preferential Treatment to Any Segment of the Class</u>

The Settlement Agreement allows each Class Member to claim an equal *pro rata* share of the Settlement Fund per telephone number to which text messages were sent.  A *pro rata* distribution to claiming Settlement Class Members, meaning each member who submits a valid claim receives an equal amount from the Settlement Fund, is customary in TCPA common fund class settlements. *See, e.g.*, *Wright v. Nationstar Mortage LLC*, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approving pro rata distribution of $45 per claiming class member, overruling objection that disbursement was not on a per-call basis, and amount was in line with other cases) (collecting cases);

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (claiming members recovered $34.60); *Estrada v. iYogi, Inc.*, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Steinfeld v. Discover Fin. Servs.*, 12-cv-1118, Doc. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, 08-cv-00248, Doc. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving award of $30 per claiming member).  A *pro rata* distribution provides that there is no preferential treatment to any segment of the class.  Each member may submit a valid claim and share an equal part of the Settlement Fund after deductions for fees, costs and any incentive award.

The Settlement Agreement provides that Class Counsel and the Plaintiff may apply for counsel's fees and costs and for an incentive award.  The Agreement provides no specific amount as to either.  Class Counsel will make an application to the Court for an award of fees of up to 1/3 of the Settlement Fund and for an Incentive Award of up to $10,000 for the Plaintiff.  The application will be made 30 days prior to the objection, opt-out and claim deadline. Further, both the Postcard Notice and the Long Form Notice set forth that Class Counsel will submit applications up to these amounts. The Court has a "fiduciary role" for class members to evaluate a request by Class Counsel for attorney fees from a class common fund and must examine such request in the overall context of the settlement. *Dakota Med., Inc.*, 2017 WL 1398816 at *5.  Incentive awards promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. Manual for Complex Litig. § 21.62 n.971 (4th ed. 2004).  In evaluating such an award, the Court has a duty to make sure such an award is deserved, reasonable and does not destroy the adequacy of the class representative. *Dakota Med.*, *Inc.,* 2017 WL 1398816 at *5. Neither award contemplated here "is outside the realm of what may be reasonable, contingent on a sufficient showing, and [should provide] no cause for the court to hesitate in finding the settlement preliminarily fair." *Id.* (preliminarily approving settlement agreement where counsel represented they would seek no more than 1/3 of the settlement in fees and an incentive award of $15,000) (collecting cases)

E.   The Settlement Agreement Provides a Substantial Benefit to Settlement Class
     Members and Falls Within a Range of Possible Approval

The Settlement Agreement requires Harman to pay $4,000,000.00 into the Settlement Fund. The Settlement Fund is non-reversionary, ensuring that all or nearly all monetary benefits will go to Settlement Class Members or *cy pres*—no amount of the Settlement Fund will return to Harman. Assuming the Court grants the requested attorney's fees and costs of 1/3 of the fund and the $10,000.00 incentive award, and assuming the estimated administrative costs of approximately $210,000.00, Settlement Class Members will share $2,446,666.66.

"The prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent." *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) (*quoting Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012)); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043–44 (S.D. Cal. 2015) (claims rate of 7.7% is "higher than average" in TCPA action); *James v. JPMorgan Chase Bank, N.A.*, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) (participation rate of five percent "typically occurs in a TCPA class action").

It is not possible to know the claims rate until after the claims process is complete. Assuming a 5% claims rate, each claiming member would recover $210, a 10% claims rate would result in claiming members receiving $105, a 20% claims rate would result in members receiving $52.[3] These figures establish that the Settlement Fund is substantial for a class of this size and well within the range of possible final approval. *See, e.g., Couser*, 125 F. Supp. 3d at 1043–44 (claims rate of 7.7% is "higher than average" in TCPA action and "although Class Members are only expected to recover approximately $13.75, the Court finds that in light of the large number of Class Member claimants and high claims rate, the amount of the Settlement Fund weighs in favor of approving the Settlement."); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F.Supp.3d 781, 787 (N.D. Ill. 2015) (approving $34.60 per claimant with a 7.8% claims rate); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *5 & 10 (N.D. Cal. Aug. 29, 2014) (approving $20-40 per claiming class member with a participation rate of 3.2%).

---

[3] These amounts are calculated by dividing the assumed Net Settlement Fund ($2,449,950.66) by the number of claiming members under three different scenarios (5%, 10% or 20% of 232,000 total members).

Because the Settlement Agreement was negotiated at arm's-length by experienced and knowledgeable counsel, because the Settlement does not grant unwarranted preferential treatment to different Settlement Class Members, and because it is reasonable and easily falls within the range of possible approval, this Court should preliminary approve the Settlement Agreement.

**POINT II**
**THE SETTLEMENT CLASS SHOULD BE CERTIFIED**

**I.   LEGAL STANDARD FOR CONDITIONAL CERTIFICATION OF CLASS ACTION FOR SETTLMENT PURPOSES**

To approve a class action settlement, the Court must also find that the Settlement Class is appropriately certified pursuant to Fed. R. Civ. P. 23. *See Manual for Complex Litigation* (4th) § 21.632 ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."). In the context of a settlement class, certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods.*, *Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

To be certified, a proposed class must satisfy the criteria set forth in Federal Rule of Civil Procedure 23(a) and fit into one of the three categories outlined in Rule 23(b).  *Amchem*, 521 U.S. at 614; *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (citation omitted). Rule 23(a) requires that (1) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity), (2) there are questions of law or fact common to the proposed class (commonality), (3) the named-plaintiff's claims are typical of those of the class (typicality), and (4) the named-plaintiff and her counsel will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4).  In addition, where, as here, certification is sought under Rule 23(b)(3), the proponent of class certification must show that (1) the common questions of law or fact predominate over questions affecting only individual class members (predominance), and (2) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3).

For settlement purposes only, Plaintiff respectfully requests that the Court provisionally certify the Settlement Class defined as:

> All individuals and entities who were sent text messages from, or related to, the A&W Text Club between February 17, 2012 and the date of entry of the Preliminary Approval Order..

*See Settlement Agreement*, Art II ¶ 32.

As detailed below, the Settlement Class satisfies the Fed. R. Civ. P. 23 requirements.

## II.    FED. R. CIV. P. 23(A) REQUIREMENTS

### A.   Numerosity is Satisfied

Numerosity requires that "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The exact number of class members need not be known, so long as the class is readily ascertainable. *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  In addition, there is no specific number of class members required, though the numerosity requirement is typically satisfied when the class comprises at least forty members. *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). When focusing specifically on TCPA cases, numerosity has been satisfied with as few as 203 class members. *Lo*, 2011 WL 6300050, at *2; *see also Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 646-47 (W.D. Wash. 2007) (numerosity satisfied with 3000 class members).

The proposed class here consists of the owners of the 232,602 cellular telephone numbers sent text messages from the A&W Text Club during the class period. Joinder of these claims is clearly impractical and the numerosity requirement is satisfied.

### B.   Commonality is Satisfied

Pursuant to Rule 23(a)(2), a court must determine whether "there are questions of law or fact common to the class," ordinarily known as "commonality." Fed. R. Civ. P. 23(a)(2). Commonality is demonstrated when the claims of all class members "depend upon a common contention . . . that is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011). Commonality exists "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). The standard is "construed permissively," *id*. at 978, and "[i]t

is not necessary that members of the proposed class share every fact in common." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotation marks omitted).

Here, common issues of fact and law include: (1) whether Harman used an automated telephone dialing system to call cellular phones; (2) whether Harman knew or should have known that it called consumers without prior express written consent if it did, in fact, call without prior express written consent; and (3) whether a private right of action exists, jurisdiction is proper and statutory damages are available. Determination of these issues, regardless of the answers, will resolve the allegations for the whole Class "in one stroke." *Dukes*, 131 S. Ct. at 2545. As such, the commonality requirement is satisfied. *See also, Avio, Inc. v. Alfoccino, Inc.*, 2015 WL 8731983, at *7 (E.D. Mich. Dec. 14, 2015) (common questions include whether Defendants first obtained express invitation or permission, whether Defendants' acts were willful or knowing); *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 WL 444619, at *2 (S.D. Cal. Feb. 5, 2013).

### C. Typicality is Satisfied

The third requirement of Rule 23(a)—typicality—is satisfied where "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is satisfied where the representatives claims are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)*; see also Cal. Rural Legal Assistance, Inc. v. Legal Servs.* Corp., 917 F.2d 1171, 1175 (9th Cir. 1990).

Plaintiff's TCPA claim arises from the same conduct as those of the Settlement Class Members. He was sent a text message on his cellular device as part of the A&W Text Club after February 17, 2012. Because Plaintiff's claims arise from and challenges the same course of conduct, typicality is satisfied.

D.  <u>Adequacy of Representation is Satisfied</u>

Adequacy under Fed. R. Civ. P. 23(a)(4) is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy has two components: (i) whether the named-plaintiff and her counsel have any conflicts of interest with other class members, and (ii) whether the plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020.

Here, there are no conflicts of interest between Plaintiff (or his counsel) and the other members of the Settlement Class, as they are all seeking recovery under the same law for the same kind of injury. Further, Plaintiff's counsel has extensive experience litigating consumer class actions, and have been appointed class counsel in numerous other cases. Lemberg Decl. ¶ 5; Taylor Decl. ¶ 5; *see also Lavigne v. First Community Bancshares, Inc., et al.*, 2018 WL 2694457, at *5 (D.N.M. June 5, 2018) (certification in Telephone Consumer Protection Act ("TCPA") action); *Munday v. Navy Federal Credit Union*, ECF No. 60, 15-cv-01629 (C.D. Cal., July 14, 2017) (final approval of class settlement of $2.75MM in TCPA action); *Brown v. Rita's Water Ice Franchise Co. LLC*, No. CV 15-3509, 2017 WL 1021025, at *1 (E.D. Pa. Mar. 16, 2017) (final approval of class settlement of $3MM common fund in TCPA action); *Duchene v. Westlake Servs., LLC*, No. 2:13-CV-01577-MRH, 2016 WL 6916734 (W.D. Pa. July 14, 2016) (final approval of class settlement of $10MM common fund in TCPA action); *In Re: Convergent Telephone Consumer Protection Act Litigation*, ECF No. 268, 3:13-md-02478 (D. Conn., November 10, 2016) (final approval of class settlement consisting of $5.5MM common fund in TCPA action); *Evon*, 688 F.3d at 1032 (finding counsel adequate class counsel); *Seekamp v. It's Huge, Inc.*, 2012 WL 860364, at *5 (N.D.N.Y. Mar. 13, 2012) (same); *Butto v. Collecto Inc.*, 290 F.R.D. 372, 396 (E.D.N.Y. 2013) (same); *Zimmerman v. Portfolio Recovery Associates, LLC*, 276 F.R.D. 174, 180 (S.D.N.Y. 2011) (same).   Based on their experience and track record, Plaintiff's counsel is clearly adequate to represent the Settlement Class.

## III.  **<u>Fed. R. Civ. P. 23(b)(3) Requirements</u>**

In addition to satisfying Rule 23(a), a class must satisfy the requirements of Rule 23(b)(1), (2), or (3). *Amchem*, 521 U.S. at 623.  To certify a class under Rule 23(b)(3), the plaintiff must show that (1) the common questions of law and fact predominate over any questions affecting only

individuals and (2) the class action mechanism is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2007). Certification under Rule 23(b)(3) is encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon,* 150 F.3d at 1022.

### A.   Common Questions of Law and Fact Predominate

The focus of the predominance requirement is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  Predominance tests "whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation" (*Wolin*, 617 F.3d at 1172), and exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication" (*Hanlon*, 150 F.3d at 1022). "Generally, when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation." *CE Design Ltd.v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 142 (N.D. Ill. 2009) (*citing General Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014). Predominance is satisfied here because common questions, such as whether Harman used an ATDS and whether Harman possessed prior express written consent to call Settlement Class Members, present a significant aspect of the case.  For the Settlement Class Members, these questions can be resolved in a single adjudication thereby satisfying predominance. *Malta*, 2013 WL 444619, at *4 ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members. Accordingly, the predominance requirement is met.")

### B.   Superiority is Satisfied

The purpose of the superiority requirement is one of judicial economy and assurance that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175-76.  A class-wide settlement of this action is superior to other available methods for the fair and efficient adjudication of this controversy because it is neither economically feasible, nor judicially efficient, for the hundreds of thousands Settlement Class Members to pursue their claims against Harman on an individual basis. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39,

100 S. Ct. 1166 (1980).  By utilizing the class action vehicle, relief may be provided to class members without the need for numerous separate trials on the same facts.  Hence, a class action will achieve economies of time, effort and expense, as well as promote uniformity of decision as to persons similarly situated.  Because this is a settlement class, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620.  Additionally, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See id.* at 617 (noting the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").  Certification for purposes of settlement is therefore appropriate.

**POINT III**
**THE PROPOSED NOTICE AND NOTICE PLAN ARE REASONABLE**

In addition to preliminarily approving the substance of the Parties' Settlement Agreement, the Court should approve the proposed class Notice and Notice Plan. Pursuant to Rule 23(e), the Court is required to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Although the question of what constitutes reasonable notice is left to the discretion of the Court, Rule 23 provides that the best notice practicable "include[s] individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here.

First, the proposed Notice (Exhibits B and D to the Settlement Agreement) communicates the information required by Rule 23(c)(2)(B)(i)-(vii). Second, the Settlement Agreement calls for a process that the Parties anticipate will provide individual notice by mail to the vast majority of Settlement Class Members. The A&W Text Club messaging records contain the entire record of messages sent as part of the A&W Text Club.  The Settlement Administrator will use those telephone numbers to perform a reverse lookup of class members' current or last-known address information, and will then cross-reference this information with the United States Postal Services' change of address database to confirm its accuracy. (Declaration of Carla A. Peak of KCC at paragraphs 9-16, 20).  Mailed notice is presumptively reasonable, and satisfies the requirements of

due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965 (1985) (finding the procedure "where a fully descriptive notice is sent by first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process").  Moreover, numerous courts have approved mailing notice to class members via a postcard. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144, 151-52 (D.N.J. 2013) (finally approving settlement with postcard notice); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 99 (E.D. Pa. 2013) (finally approving settlement with postcard notice); *Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509, at *6-7, 29 (S.D. Ohio Apr. 4, 2014) (finally approving settlement with postcard notice sent to majority of class); *Malta,* 2013 WL 444619, at *11 (preliminarily approving settlement with postcard-type notice); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *4 (D.N.J. Sept. 10, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) (preliminarily approving settlement with postcard notice for non-current customers and bill stuffers for current customers); *In re Mut. Funds Inv. Litig.*, 2011 WL 1102999, at *1-2 (D. Md. Mar. 23, 2011) (finding postcard notices satisfy Rule 23); *Perez v. Asuiron Corp.*, 501 F. Supp. 2d 1360, 1375-77 (S.D. Fla. 2007) (finally approving settlement with postcard notice).

The Settlement Administrator will maintain a case-specific website to post relevant documents (the Settlement Agreement, the Complaint, any Preliminary Approval Order) in addition to the Long Form Notice. Declaration of Carla A. Peak ¶ 17.   Further, the Settlement Administrator will establish and maintain a telephone number that Settlement Class members can call to receive information via recorded messages or to request an additional Notice. *Id*. ¶ 18.

## CONCLUSION

For the reasons set forth above, the Plaintiff respectfully request that the Court enter the proposed Preliminary Approval Order:

1. Preliminarily approving the terms of the Parties' Settlement Agreement;

2. Conditionally certifying the Settlement Class for the limited purpose of settlement;

3. Appointing Plaintiff as Settlement Class Representative;

4. Appointing Sergei Lemberg and Stephen F. Taylor of Lemberg Law, LLC, as Class Counsel;

5. Approving the form, content and method of delivering Notice to the Settlement Class set forth in the Parties' Settlement Agreement and in the exhibits thereto; and

6. Scheduling a Final Approval hearing in accordance with the deadlines provided in the Settlement Agreement.

Dated: June 12, 2019

LEMBERG LAW, LLC

＿＿＿/s/＿Stephen Taylor＿＿＿＿＿＿＿＿＿＿＿
Stephen Taylor (admitted Pro Hac Vice)
Sergei Lemberg (admitted Pro Hac Vice)
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this, the 12th day of June, 2019, I filed a copy of the foregoing with the Clerk of the Court through the CM/ECF system which sent notice of such filing to the following:

David L Bird , PHV
McKay Burton & Thurman, PC
15 W. South Temple
Suite 1000
Salt Lake City, UT 84101

Martin W. Jaszczuk , PHV
Jaszczuk P.C.
311 South Wacker Dr.
Suite 1775
Chicago, IL 60606

Adam D. Bowser , PHV
Arent Fox LLP
1717 K Street, NW
Washington, DC 20006-5344

_/s/ Stephen Taylor_____
Stephen Taylor