UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY LARSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HARMAN-MANAGEMENT CORPORATION,<br><br>Defendant. | No. 1:16-cv-00219-DAD-SKO<br><br>ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES AND COSTS AND AN INCENTIVE PAYMENT<br><br>(Doc. Nos. 202, 206) |

This matter came before the court on June 15, 2020 for hearing on plaintiff's unopposed motions for final approval of a class action settlement and for attorneys' fees and costs and an incentive payment. (Doc. Nos. 202, 206.) Attorney Stephen Taylor appeared telephonically on behalf of plaintiff. Attorneys David Bird and Martin Jaszczuk appeared telephonically on behalf of defendant Harman-Management Corporation ("Harman").

In this action, plaintiff alleges that Harman[1] sent unauthorized, automated text messages to putative class members' cellular phones in violation of the Telephone Consumer Protection

---

[1] Initially, plaintiff had named an additional entity, 3Seventy, Inc., as a defendant in this action. On June 12, 2019, plaintiff and 3Seventy, Inc. stipulated to dismissing 3Seventy, Inc. from this action without prejudice. (*See* Doc. Nos. 194, 195.) That stipulated dismissal will convert to a dismissal with prejudice upon entry of this final order approving this class settlement between the settlement class and defendant Harman. (Doc. No. 194 at 2.) The settlement agreement states that 3Seventy, Inc. is a released party. (Doc. No. 207 at 5.)

1

Act, 47 U.S.C. § 227 *et seq.* (the "TCPA").  (Doc. No. 22.)  The court previously granted preliminary approval of the class action settlement in this action on December 20, 2019.  (Doc. No. 199.)  Pertinent factual details may be found in that order.  On March 20, 2020, plaintiff filed the pending unopposed motion for attorneys' fees, and on May 20, 2020, plaintiff filed the pending unopposed motion for final approval of the class action settlement.  (Doc. Nos. 202, 206.)  For the reasons that follow, the court will grant final approval of the class action settlement and will award attorneys' fees and costs and an incentive payment as requested.

## FINAL CERTIFICATION OF SETTLMENT CLASS

The court evaluated the standards for class certification in its prior order granting preliminary approval of the settlement and found preliminary certification warranted.  (Doc. No. 199 at 13–18.)  Since no additional issues concerning class certification have been raised, the court will not repeat its prior analysis here, and finds that final class certification in this case is appropriate.  The following class is therefore certified:  All individuals and entities who were sent text messages from, or related to, the A&W Text Club between February 17, 2012 and the date of entry of the Preliminary Approval Order.  (Doc. Nos. 207 at 4; 199 at 13.)

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.").  This requires that:  (i) notice be sent to all class members; (ii) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement; and (iv) class members be given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)–(5).  The settlement agreement in this action was previously filed on the court docket (*see* Doc. No. 193-1, Ex. A), and class members have been given an opportunity to object thereto (*see* Doc. No. 199 at 19).  The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

/////

/////

2

A.     Notice

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025. It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement, because it serves as "adequate notice of class counsel's interest in the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where the notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

The court previously reviewed the postcard notice and the longform notice of settlement in this case at the preliminary approval stage and found both to be satisfactory. (Doc. No. 199 at 18–20.) Following the grant of preliminary approval, the settlement administrator mailed the postcard notice to putative class members. (Doc. No. 207 at 6.) Although the putative class consists of 233,026 total class members (as represented by the unique cellphone numbers in the text message dataset), the settlement administrator mailed the postcard notices to the 197,816 class members "whose addresses could be identified after three reverse look up searches." (*Id.*) Of those 197,816 mailings, 1,484 were returned with forwarding addresses, to which the settlement administrator re-mailed the notices. (*Id.*) Of the 197,816 initial mailings, 31,898 were returned as undeliverable. (*Id.*) The administrator performed address searches for those mailings that were returned as undeliverable and was able to find updated addresses for 5,645 putative class members, to which the settlement administrator re-mailed the notices. (*Id.*) Accordingly, of

3

the 233,026 total class members, 171,563 putative class members, or 74%, received actual notice of the settlement. (*Id.*) The longform notice was also made available to putative class members via a settlement website that the settlement administrator established, which had received 19,308 visits as of the time the pending motion for final approval was filed. (*Id.* at 7.)

Given the above, the court concludes adequate notice was provided to the class here. *See Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (noting that court need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). The court accepts the reports of the settlement administrator and finds sufficient notice has been provided, thereby satisfying Federal Rule of Civil Procedure 23(e)(1).

**B.     Final Fairness Hearing**

On June 15, 2020, the court held a final fairness hearing, at which class counsel and defense counsel appeared. No class members, objectors, or counsel representing the same appeared at the hearing. For the reasons explained below, the court now determines that the settlement reached in this case is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).

At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1026. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also Lane*, 696 F.3d at 818–19. Having already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits. *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625. Ultimately, "the decision to approve or reject a settlement is committed to the sound

4

discretion of the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and proof." *Staton*, 327 F.3d at 953 (quoting *Hanlon*, 150 F.3d at 1026).

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7. Where the parties have reached a settlement agreement prior to class certification, the court has an independent duty on behalf of absent class members to be vigilant for any sign of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (noting "settlement class actions present unique due process concerns for absent class members" because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee") (internal quotations and citations omitted).

In particular, where a class action settlement agreement is reached prior to a class being certified by the court, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *Id.* at 946–47. District courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. These more subtle signs include: (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," and therefore carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an

5

unfair settlement on behalf of the class"; and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotations omitted). The Ninth Circuit has also recognized that a version of a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to an agreed upon amount. *Lane v. Facebook, Inc.*, 696 F.3d 811, 832 (9th Cir. 2012); *In re Bluetooth*, 654 F.3d at 947; *In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling.") (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991)).

While this court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard and "must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). Thus, while the court should examine any relevant *Churchill* factors, the failure to review a pre-class certification settlement for those subtle signs of collusion identified above may constitute error. *Id.* at 1224–25.

### 1. Strength of Plaintiff's Case and the Risk of Maintaining Class Action Status Throughout the Trial

When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation" because evidence has not been fully presented. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id*.

Here, plaintiff represents that recovery on the merits in this case is uncertain. (Doc. No. 207 at 9.) Specifically, plaintiff identifies the following contested issues:

/////

> (1) whether Plaintiff can maintain the action as a class action; (2) whether the system used to send the text messages qualifies as an automatic telephone dialing system under the TCPA; (3) whether the Plaintiff's theories of individual and vicarious liability can succeed; and (4) whether there was prior express consent to the allegedly unlawful text messages.

(*Id.*)  Although plaintiff believes that a trier of fact could conclude that Harman engaged in the violations alleged by the class, he acknowledges that Harman "raised substantial arguments against class certification and on the merits of the case as reflected in the briefing." (*Id.*)  Indeed, as noted in the court's prior order granting preliminary approval, the parties engaged in extensive motion practice, including three motions for summary judgment (Doc. Nos. 101, 128, 174) and a motion for class certification (Doc. No. 98), each of which the court administratively terminated after learning that the parties had reached a class-wide settlement. (Doc. No. 199 at 2; *see also* Doc. Nos. 188, 190.)  The briefing on these motions reveal, amongst other disputed issues, that Harman contested and continues to contest whether it used an automatic telephone dialing system, as defined by the TCPA, and whether plaintiff could certify the class because of issues relating to whether members consented to receiving the messages that they did. (*See, e.g.*, Doc. Nos. 128 at 8–15; 134 at 7; 174 at 19–23.)

Therefore, it appears that while plaintiff has potentially meritorious claims, it is far from certain that he would have prevailed on those claims.  The court finds that consideration of the first and third *Churchill* factors weigh in favor of granting final approval of the settlement in this action.

        2.      <u>Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12-cv-1059-KJM-AC, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).

7

Here, plaintiff has expressed his concerns regarding the potential expense and duration of further litigation in this action. (Doc. No. 207 at 9–10.) As discussed, class certification remains contested between the parties, as well as the issues raised in the three summary judgment motions that were administratively terminated by the court. Moreover, and as discussed in the court's prior order granting preliminary approval of the parties' class action settlement, Harman's total exposure in this action is in the billions of dollars, given that 13.5 million text messages were sent and given that the TCPA provides for statutory damages of $500.00 for each violation (which can be tripled to $1500 for violations that are found to be willful). (Doc. No. 199 at 11.) As plaintiff points out, some courts have found TCPA recoveries in the billions of dollars to violate the Due Process Clause, *see, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962–63 (8th Cir. 2019), and there is a potential that even if such a large recovery was found not to violate the Due Process Clause, that such an amount might not be recoverable as it would likely bankrupt Harman. (Doc. No. 207 at 9–10.)

Accordingly, although the parties have been litigating this case for over four years, that timeline would be extended even further by litigating this case to a final resolution through a jury trial. The parties' expenses would increase as litigation costs continue to accrue, and any recovery of a monetary judgment, which is not guaranteed, would be prolonged. By contrast, the settlement in this action provides compensation that is available now, without the additional time and risk of decisions that would likely be subject to lengthy appeals processes. Thus, consideration of this factor also weighs in favor of granting final approval.

   3.   The Amount Offered in Settlement

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs'

expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

As discussed above, Harman's total exposure in this action were the case to proceed to trial and were the class to prevail on every claim is in the billions of dollars. The settlement is for a non-reversionary common fund of $4,000,000.00. (Doc. No. 207 at 4, 11.) The common fund provides for: (1) $10,000.00 enhancement award to the representative plaintiff, plaintiff Larson; (2) payment of attorneys' fees to class counsel in the amount of 25% of the common fund, or $1,000,000.00; (3) class counsel's costs and expenses of approximately $42,987.39; and (4) settlement administration fees in the amount of $210,000.00 to KCC Class Action Services, LLC. (*Id.* at 3 n.3.)

After deducting the costs of administering the settlement, the fees and costs of class counsel, and the incentive payment to plaintiff, "[e]ach Settlement Class Member who submitted a simple claim form[2] will receive a *pro rata* share of the net fund, $2,737,012.61." (*Id.* at 11.) Of the 171,563 putative class members who received actual notice, 17,795 timely submitted claim forms postmarked or filed on or before April 20, 2020 and 102 submitted untimely claim forms. (*Id.* at 7.) "Owing to the Covid-19 restraints on normal activities, the Parties advised [the settlement administrator] to treat the 102 [untimely] claim forms . . . as timely." (*Id.*) A total of 17,897 claim forms have therefore been received. Of those, 17,439 "are complete and valid claim forms." (*Id.*) Accordingly, the claims rate is approximately 7.5% of all putative settlement class

/////
/////
/////
/////

---

[2] As approved of by the court in its order granting preliminary approval of the parties' class action settlement, the notices in this action required putative class members to submit a claim form to recover their pro rata share of the settlement fund. (Doc. No. 199 at 19) (noting that (1) in this TCPA class action a claim form would serve as a useful check to prevent fraud and to ensure that the settlement fund is distributed to class members who deserve to recover from it, and (2) other district courts have approved the requirement that putative class members submit claim forms in TCPA class actions like this one).

members. The 17,439 class members who submitted complete and valid claim forms will receive $156.95 each.[3] (*Id.* at 3 n.3.)

At the preliminary approval stage, the court previously found such a claim rate and the individual amount offered in settlement of this action to be consistent with those obtained in other TCPA settlements. (*See* Doc. No. 199 at 12) (collecting cases). Since no additional issues concerning the claim rate or the amount offered in settlement have been raised, the court will not repeat its prior analysis here and finds both to be consistent with recoveries obtained in other TCPA class action settlements.

### 4. Extent of Discovery Completed

The court must also consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). Thus, approval of a class action settlement "is proper as long as discovery allowed the parties to form a clear view of the strength and weaknesses of their case." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

Here, the parties engaged in significant and comprehensive discovery and data exchange, including the production of over 46,000 pages of documents and several expert reports and depositions, including the deposition of plaintiff Larson. (Doc. Nos. 199 at 6; 203 at 16.) Moreover, plaintiff Larson surrendered two of his cellular phones to a third party-forensic examiner who imaged the phones. (Doc. No. 203 at 17.) Based on the discovery, the parties engaged in mediation before the Honorable Morton Denlow (Ret.). (Doc. No. 199 at 6.)

---

[3] Ninety-six claims forms were deficient for lack of a signature, and the settlement administrator is contacting those claimants and providing them with an opportunity to cure the deficiency. (Doc. No. 207 at 3 n.2.) Thus, the class may increase by a small number prior to final disbursement of the settlement fund, but such an increase does not affect the analysis undertaken in this order, given that, if all ninety-six deficient claim forms were cured, the claim rate would still be approximately 7.5% and each class member would receive $156.09.

1   Although that mediation session concluded without a settlement being reached, the parties

2   continued to engage in negotiations and eventually arrived at the settlement agreement.  (*Id.*)

3   Based upon this history, the court is convinced that the parties' negotiations were extensive,

4   involved, and non-collusive, lending credence to the fairness of the settlement.

5         Accordingly, the court concludes that consideration of this factor also weighs in favor of

6   granting final approval.

7         5.      <u>Experience and Views of Counsel</u>

8         Class counsel, Sergei Lemberg and Stephen Taylor of Lemberg Law, LLC, filed

9   declarations in support of plaintiff's motion for preliminary approval, detailing their extensive

10  experience in litigating class actions and, specifically, TCPA class actions.  (Doc. Nos. 193-2;

11  193-3.)  Based on their experience and qualifications, investigation of the disputed factual and

12  legal issues involved in this case, and evaluation of the risks of continued litigation, both

13  attorneys concluded that this settlement is fair and reasonable.  (*Id.*)  Consideration of class

14  counsel's experience and expressed opinions in this regard also weighs in favor of final approval

15  of the settlement.

16        6.      <u>Reaction of the Class to Proposed Settlement</u>

17        According to the declaration of Lana Lucchesi, director at KCC Class Action Services,

18  LLC, no member of the class has filed an objection to the settlement pending before the court for

19  final approval, and only four individuals have requested to opt-out of the settlement, and those

20  individuals will be excluded from the settlement.  (Doc. No. 207-1 at 4–5 and Ex. C.)  Similarly,

21  no class members appeared at the final fairness hearing to raise any objections to the settlement.

22        The absence of objections to a proposed class action settlement in this case strongly

23  supports the conclusion that the settlement is fair, reasonable, and adequate.  *See Nat'l Rural*

24  *Telecomms. Coop.*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed

25  Settlement provides further support for final approval of the Proposed Settlement.") (citing

26  cases); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844, at *4 (S.D.

27  Cal. Mar. 6, 2009).  Accordingly, consideration of this factor weighs significantly in favor of

28  granting final approval.

       7.     <u>Subtle Signs of Collusion</u>

The court now turns to a review of whether any of the "more subtle signs" of collusion recognized by the Ninth Circuit are present here. *See In re Bluetooth*, 654 F.3d at 947. The award of attorneys' fees sought here—one-fourth of the common fund—is a percentage typically awarded in the Ninth Circuit. *See id.* (setting a 25% benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same); *see also Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). Moreover, the proposed attorneys' fees award in this case is not disproportionate to the monetary distribution that the class will receive, and there is notably no reversionary clause in the settlement agreement.[4] Finally, the court notes that at the preliminary approval stage, class counsel requested one-third, or 33%, of the common fund in attorneys' fees, a percentage that is often approved in such cases. Now, class counsel is merely seeking 25% of the common fund, which is not only in line with Ninth Circuit precedent as discussed above, but the decision to so reduce the amount sought in attorneys' fees results in an additional $290,345.94 in the net fund to the class. (*See* Doc. No 207 at 5 n.5.) The court is satisfied that the settlement is not the product of collusion.

In sum, the count finds, after considering all of the relevant factors, that this settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e).

/////

/////

/////

---

[4] The settlement agreement provides that, if money remains in the settlement fund from uncashed checks, the settlement administrator shall make a second distribution to those who did claim their checks, if feasible. (Doc. No. 207 at 4.) If that is not feasible, the uncashed amounts will go to a *cy pres* recipient. (*Id.*) In the pending motion, plaintiff asks this court to approve the parties' *cy pres* nominee, the Privacy Rights Clearinghouse ("PRC"). (*Id.* at 14.) The court finds that there is a "driving nexus between the plaintiff class and [PRC]," *Dennis*, 697 F.3d at 865, and will therefore approve PRC as the parties' *cy pres* beneficiary.

## ATTORNEYS' FEES AND COSTS AND INCENTIVE PAYMENT

**A.     Attorneys' Fees**

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fees award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. cv 14-08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). As noted, the Ninth Circuit has generally set a 25% benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55. Ultimately, however, "[s]election of the benchmark or any other rate must be

supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Here, the court preliminarily approved plaintiff's initial request for attorneys' fees in the amount of $1,333,333.33, or 33% of the settlement fund. (Doc. No. 199.) The court noted then that that amount was "above the Ninth Circuit benchmark amount" in common fund cases. (*Id.*) As discussed above, in the pending motion for attorneys' fees, class counsel now seeks only $1,000,000.00, or 25% of the settlement fund, in attorneys' fees. (Doc. No. 203.) In addition to being in line with the Ninth Circuit's benchmark rate, numerous factors support this requested attorneys' fees award. This litigation was pursued purely on a contingency-fee basis, with class counsel undertaking representation at their own expense for over four years. (*Id.* at 11.) Class counsel asserts that they risked not only a great deal of time, but also a great deal of expense in pursuing this litigation. (*Id.*); *see also Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). Class counsel spent approximately 1,798 attorney and professional staff hours working on this matter. (*Id.* at 15.) Absent successful resolution, none of this attorney time would have been compensated. Class counsel incurred $42,987.39 in out-of-pocket expenses litigating the case over a four-year period. (*Id.* at 16.) Further, class counsel are experienced litigators of TCPA class actions. Consideration of each of these factors supports an award of the benchmark rate of 25% for attorneys' fees here.

The absence of any objections to the settlement or requests for exclusions also supports the award of the attorneys' fees sought in this case. The class notices specifically advised class members that class counsel would seek attorneys' fees, as well as reimbursement for litigation costs, from the settlement fund. (Doc. No. 198-2 at 2, 6–7.) Therefore, plaintiff's request for attorneys' fees appears to have the support of the class.

The court next turns to the lodestar amount, in order to cross-check the reasonableness of the requested attorneys' fee award. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)). Moreover, beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier is often applied. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 NEWBERG ON CLASS ACTIONS § 14.7 (stating courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting NEWBERG).

Here, class counsel have submitted declarations indicating that five different attorneys from their firm have worked on this case for time totaling 1,798 hours. (Doc. No. 203-2 at 6; *see also* Doc. No. 203 at 15.) These attorneys billed at rates of $300 for associates and between $400 and $650 for of counsel and partners. (Doc. No. 203-2 at 6–8.) The undersigned has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017). Applying class counsel's hourly rates results in a lodestar fee of $839,275.00. (Doc. No. 203-2 at 6.) Application of a modest 1.19 multiplier to this sum would cause the lodestar to exceed the $1,000,000.00 plaintiff requests in attorneys' fees.

Accordingly, the lodestar cross-check supports the requested award of $1,000,000.00 in attorneys' fees, an amount equal to 25% of the total fund in this case.

/////

15

### B. Expenses of Class Counsel

Additionally, class counsel seek to recover the costs expended on this litigation. Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for: "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id*.

Here, class counsel request reimbursement of their expenses in the amount of $42,987.39. (Doc. No. 203 at 16; *see also* Doc. No. 203-2 at 8–9, Exs. A, B.) The court has reviewed class counsel's declarations and the attached expense reports, finds all the expenses incurred to be reasonable, and will approve their reimbursement in the amount requested.

### C. Incentive Award

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and in considering the amount of such awards the court should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)); *see also Rodriguez*, 563 F.3d at 958–59.

Here, plaintiff Larson seeks an incentive award of $10,000. (Doc. No. 203 at 16.) In its order granting preliminary approval of this class action settlement, the court found the requested amount to be reasonable and approved the incentive award on a preliminary basis, inviting plaintiff to provide evidence that the requested award is warranted here in moving for final

16

approval. (Doc. No. 199 at 10.) In his declaration attached to the pending motion for attorneys' fees and cost and incentive award, attorney Stephen Taylor, one of the two attorneys who are class counsel in this action, declares that plaintiff Larson has been "an exemplary class representative for the past four years." (Doc. No. 203-1 at 3; *see also* Doc. No. 203 at 16–17.) For example, counsel explains, plaintiff Larson actively participated in the litigation, by responding to discovery requests and sitting for his deposition; assisted counsel by providing documents and various information in the investigation and discovery phases; and surrendered two of his cellphones to a third-party examiner who imaged the phones in order to provide documentation to Harman. (Doc. No. 203-1 at 3–4; Doc. No. 203 at 16–17.) On that last point, attorney Taylor notes that,

> I have never had a class representative need to surrender their smart phones in any other case. . ... [A]ctual surrender of a device to a third party is very rare… . This was a significant contribution to the litigation and, in my opinion, undergirds the appropriateness of the requested incentive award.

(Doc No. 203-1 at 4.) Moreover, as noted above, no member of the class has filed an objection to the settlement, despite the notice informing the class that plaintiff Larson would seek a $10,000.00 inventive payment from the common fund. Considering these factors, the court finds that an incentive award of $10,000.00 for plaintiff Larson is appropriate under the circumstances of this case.

**D.     Settlement Administrator Costs**

The court previously approved the appointment of KCC Class Action Services, LLC to serve as the settlement administrator. (Doc. No. 199 at 20.) The court then noted that the amount KCC Class Action Services, LLC estimated for its expenses ($209,557.00) was comparable to payments approved by this court in prior cases. (*Id*. at 21.) KCC Class Action Services, LLC has filed a declaration with the court indicating its costs incurred-to-date, $170,366.91, as well as its anticipated total costs for completion of the settlement administration, $210,000.00. (Doc. No. 207-1 at 5.) The court finds these costs reasonable and will direct payment in the requested amount of $210,000.00. (Doc. No. 207 at 3 n.3.)

/////

**CONCLUSION**

For the reasons stated above:

1. Plaintiff's motion for final approval of this class action settlement (Doc. No. 206) is granted, the settlement class is certified, and the court approves the settlement as fair, reasonable, and adequate;

    a. The Privacy Rights Clearinghouse is approved as the parties' *cy pres* beneficiary;

    b. The four putative class members who opted out of the settlement and the settlement class (*see* Doc. No. 207-1, Ex. C) are not bound by and are excluded from the settlement;

    c. The parties are directed to effectuate all terms of the settlement agreement and any deadlines or procedures for distribution therein;

2. Plaintiff's motion for attorneys' fees and costs and an incentive award (Doc. No. 202) is granted, and the court awards the following sums:

    a. Class counsel shall receive $1,000,000.00 in attorneys' fees and $42,987.39 in expenses;

    b. Plaintiff Larson shall receive $10,000.00 as an incentive payment; and

    c. KCC Class Action Services, LLC shall receive at most $210,000.00 in settlement administration costs and expenses, with any unspent funds attributed to costs and expenses being returned to the common fund;

3. This action is dismissed with prejudice in accordance with the terms of the settlement agreement, with the court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **June 18, 2020**                    _Dale A. Drozd_
                                                              UNITED STATES DISTRICT JUDGE